PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS MELÉNDEZ MALDONADO, acusado y apelante.

*Número:* CR-78-47     *Resuelto:* 17 de octubre de 1979

---

*Hugo Rubén Félix* y *César Andreu Ribas,* abogados del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Fiscal acusó al apelante de cometer en complicidad con otros el delito de asesinato en primer grado al dar muerte a los esposos Ramón Cacho Vega y Ana María Tossas. El apelante solicitó juicio ante tribunal de derecho. El tribunal declaró al apelante culpable del delito imputado.

El planteamiento principal del procesado es que se vulneraron sus derechos constitucionales al recibirse por escrito los informes orales. Es imprescindible consignar en detalle lo sucedido para determinar con exactitud el ámbito de la controversia.

Al concluir el desfile de la prueba de ambas partes ocurrió el diálogo siguiente:

"Hon. Juez:

¿Habría algún reparo el que me reservara el fallo para una ocasión que me concedan por lo menos 45 días para estudiar la evidencia?

Lcdo. Andreu Ribas:

No hay ningún reparo. Queremos hacerle un informe a Su Señoría sobre la prueba.

Hon. Juez:

Por eso pero yo lo voy a pedir por escrito.

Lcdo. Andreu Ribas:

Yo lo que quiero es argumentar la prueba.

Hon. Juez:

Lo voy a escuchar oralmente. ¿El licenciado prefiere oral o por escrito?

Lcdo. Andreu Ribas:

Sería preferible oral.

Hon. Juez:

Fiscal.

Hon. Fiscal:

Yo lo haría oral.

Hon. Juez:

Será oral." T.E., 3ra parte, págs. 194–95.

A continuación el abogado del apelante expresó:

"Vuestro Honor, nunca se me había ofrecido la oportunidad por usted de hacer un informe por escrito." *Ibid.*, pág. 195. El señor magistrado explicó a las partes la idea, recalcó que ellas podían escoger y preguntó:

". . . ¿Prefieren el día para informes orales o que se le [*sic*] conceda un término simultáneo a los tres para argumentar por escrito, o sea a los dos abogados y al fiscal?" *Loc. cit.* La representación del acusado contestó inmediatamente:

"Vamos a hacerlo por escrito, Vuestro Honor." *Loc. cit.*

El ilustrado juez de instancia describió entonces el procedimiento a seguir:

"Si el día del fallo desean argumentar brevemente antes del fallo yo le [*sic*] concedo tiempo para argumentar el caso. Vamos a concederle [*sic*] simultáneamente a todas las partes para que radiquen por escrito las argumentaciones de los hechos y las cuestiones legales que entiendan ameriten discusión a los fines del fallo. El Tribunal entonces el 21 de mayo dictará el fallo. ¿Hay

algún reparo? De manera que yo tenga algún tiempo para leer las argumentaciones de cada parte." *Ibid.*, 196.

Los abogados de las partes expresaron no tener reparo alguno. *Loc. cit.*

El día acordado el tribunal de instancia resumió la prueba y afirmó que "Considero que el Fiscal ha probado, fuera de duda razonable, los cargos que le [*sic*] imputa a los acusados." *Ibid.*, 209. Cuando el tribunal emitió la declaración correspondiente de culpabilidad, lo interrumpió un abogado defensor:

"Vuestro Honor, procede que yo haga esto antes de que usted produzca su fallo." *Ibid.*, 210.
El juzgador señaló:

"Voy a dictar el fallo y después yo escucho a los abogados." *Ibid.*, 210.

Otro abogado defensor objetó:

"Hay un planteamiento que procedería antes del fallo." *Loc. cit.*
La corte dictaminó:

"El planteamiento que sea, voy a dictar el fallo con todo el respeto de los compañeros."

"... por tanto declaro a usted Luis Meléndez Maldonado... culpable de asesinato en Primer Grado. .... Vamos a ver cuál es el planteamiento de los abogados ahora." *Loc. cit.*

Los abogados defensores objetaron el haber sido privados "de oír las manifestaciones del fiscal y sus argumentos"; hicieron otros señalamientos y comentaron la prueba. *Ibid.*, 210–214. El tribunal reafirmó su fallo y, con el consentimiento de las partes, dictó sentencia el mismo día. *Ibid.*, 214–16.

Lo transcrito encierra tres cuestiones. ¿Existe un derecho estatutario o constitucional del acusado a hacer un informe oral antes de emitirse el fallo? De existir, ¿puede renunciarse? Y, por último, de haberse incurrido en alguna irregularidad en el procedimiento descrito, ¿fue ésta de tal índole que exige la revocación de la sentencia?

1. *El derecho a informar oralmente el caso al concluir la prueba.*
La Regla 136 de Procedimiento Criminal dispone:

"Terminada la prueba, las partes harán sus informes comenzando con el del fiscal, quien podrá además cerrar brevemente el debate, limitándose a rectificar el informe del acusado. El tribunal podrá en el ejercicio de su sana discreción limitar la duración y el número de los informes."

Las fuentes inmediatas de esta regla son la Regla 29.1 de Procedimiento Criminal Federal,[1] los Arts. 233(6) y 266 del Código de Enjuiciamiento Criminal de 1935, 34 L.P.R.A. secs. 712(6) y 745 (1956),[2] y el Art. 1093(5) del Código Penal de California, Cal. Penal Code (West), sec. 1093(5).[3] Otras fuentes de interés son los Arts. 734 y 736 de la propia Ley Española de Enjuiciamiento Criminal de 1882, que comenzó

---

[1]Esta regla dispone en su versión original:

"After the closing of evidence the prosecution shall open the argument. The defense shall be permitted to reply. The prosecution shall then be permitted to reply in rebuttal."

[2]Estas disposiciones proveían en parte:

Artículo 233(6).—"Terminado el período de la prueba y salvo que el caso fuere sometido sin argumentación a la decisión de la corte o del jurado por ambas partes, tanto el fiscal como cualquier otro representante de la vindicta pública argumentará el caso ante la corte o el jurado, teniendo la obligación de manifestar en ese discurso de apertura, todo lo que tenga que alegar en apoyo de la acusación; el abogado de la defensa argumentará entonces el caso ante la corte o el jurado exponiendo de igual modo todos sus argumentos en favor de la defensa; el fiscal podrá entonces cerrar el debate brevemente, quedando limitado en su discurso a impugnar la argumentación de la defensa y a rectificar cualquier información errónea de hecho o de derecho, pero no presentará ningún argumento nuevo sobre los méritos del caso."

Artículo 266.—". . .Cualquiera de las partes podrá presentar al tribunal un resumen por escrito pidiendo que se comunique al jurado. Si el tribunal lo estimare exacto y pertinente, deberá comunicarlo, denegándolo en caso contrario. Al dorso de todo resumen admitido o desestimado, el tribunal consignará y firmará la providencia que recayere. Si una parte de un resumen o instrucción se comunicare, rechazándose la otra, el tribunal deberá hacer la debida distinción, indicando la parte que haya sido comunicada al jurado y la que haya sido denegada."

[3]Este artículo manda:

"When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the people, and counsel for the defendant, may argue the case to the court and jury; the district attorney, or other counsel for the people, opening the argument and having the right to close."

114

a regir en Puerto Rico el 1 de enero de 1889.(⁴) La razón de la
similitud entre cuerpos jurídicos aparentemente tan dispares
es el fenómeno de la convergencia en sectores de esta zona,
observable desde hace tiempo, entre las tres principales
familias jurídicas de nuestra época. Con modalidades diversas,
debido principalmente al uso mayor o menor del elemento
escrito, el principio de la oralidad se ha estado reconociendo
en los sistemas angloamericanos, civilistas y socialistas. M.
Cappelletti, *Giustizia e Società*, Ed. di Comunità, págs. 171–
73, Milán, 1972. El desenvolvimiento de la idea en ciertos
países ha afectado su desarrollo en otros. El derecho civil, por
ejemplo, ha ejercido considerable influencia en la formación
de los procedimientos angloamericanos, incluso en la redacción
de importantes aspectos de las Reglas Federales de Procedi-
miento. Arthur T. Vanderbilt, "The Reconciliation of the
Civil Law and the Common Law", en B. Schwartz, ed., *The
Code Napoleon and the Common-Law World*, N.Y. Univ.
Press, N.Y., 1956, págs. 389, 393–94. Lo mismo ha ocurrido a
la inversa.

Distintas razones han estado abonando el principio de la
oralidad, en juiciosa mezcla con procedimientos escritos.
Entre ellas se encuentra la reacción contra el predominio
histórico del elemento escrito en el derecho romanocanónico y
en los procesos angloamericanos de equidad; la impaciencia
con el concepto de la secretividad del sumario; el deseo de

(⁴)Estos artículos ordenaban:

"Art. 734. Llegado el momento, el Presidente concederá la palabra al Fiscal, si
fuere parte en la causa, y después al defensor del acusador particular, si le hubiese.

En sus informes expondrán éstos los hechos que consideren probados en el
juicio, su calificación legal, la participación que en ellos hayan tenido los procesados
y la responsabilidad civil que hayan contraído los mismos ú otras personas, así como
las cosas que sean su objeto, ó la cantidad en que deban ser reguladas cuando los
informantes ó sus representantes ejerciten también la acción civil.

Art. 735. El Presidente concederá después la palabra al defensor del actor civil,
si lo hubiere, quien limitará su informe á los puntos concernientes á la responsabilidad
civil.

Art. 736. En seguida dará la palabra á los defensores de los procesados, y
después de ellos á los de las personas civilmente responsables, si no se defendieren
bajo una sola representación con aquéllos."

hacer la justicia más accesible al pobre; el interés en la justicia pronta; y el alza en los valores de la publicidad de los procesos. Cappelletti, *op. cit.*, pág. 173 *et seq*. En el informe del comité correspondiente de la Cámara de Representantes de Estados Unidos sobre la Regla 29.1 se expresa:

"El comité entiende que . . . se sirve mejor la eficaz y adecuada administración de la justicia si el acusado conoce los argumentos esgrimidos por el fiscal a favor de que se le declare culpable antes de que el acusado se enfrente a la decisión de si replica y, de resolver hacerlo, qué es lo que debe contestar . . . ." (Traducción nuestra.) 8A Moore, *Federal Practice*, par. 29.1.01 [3] [a] B (2ª ed. 1978).

El Tribunal Supremo de Estados Unidos ha decidido que impedir a un procesado informar oralmente el caso al concluir la prueba constituye una violación del derecho a asistencia de abogado garantizado por la sexta enmienda a la constitución federal y aplicable a los estados en virtud de la enmienda decimocuarta. *Herring* v. *New York*, 422 U.S. 853 (1975). El derecho constitucional reconocido en *Herring* se aplica tanto a juicios celebrados ante jurado como ante tribunal de derecho. *Ibid.*, págs. 858-59. La Ley Fundamental de Alemania Federal recoge también el principio de que toda persona tiene derecho a ser oída antes de ser sentenciada. Fairén Guillén, *Los principios procesales de oralidad y de publicidad general y su carácter técnico o político*, Revista de Derecho Procesal Iberoamericana, año 1975, págs. 309, 315. La situación actual española se discute en E. Gómez Orbaneja y V. Herce Quemada, *Derecho Procesal Penal*, 8ª ed., págs. 241-42, Madrid, 1975. Para abundante bibliografía sobre el tema, relativa a países miembros de las tres grandes familias jurídicas, véase: Cappelletti, *op. cit.*, cap. 6.

En Puerto Rico, la Regla 136 de Procedimiento Criminal, antes citada, no se refiere explícitamente a informes orales en juicios celebrados por tribunal de derecho. El Art. II, Sec. 11, de la Constitución de Puerto Rico proclama, no obstante, el derecho de todo acusado a tener asistencia de abogado. La

larga tradición que encarnan las fuentes de nuestra Regla 136 y principios conocidos de derecho constitucional no permiten que resolvamos que el Art. II, Sec. 11, de la Constitución de Puerto Rico tiene un contenido menor que el establecido en *Herring* v. *New York*, supra, por la enmienda sexta a la Constitución de Estados Unidos.

2. *La renunciabilidad del derecho.*

■ El derecho constitucional a dirigirse oralmente al jurado o al juez al terminar la prueba es renunciable. Así se dispuso expresamente en el Art. 233(6) de nuestro Código de Enjuiciamiento Criminal. El historial de la Regla 136 de Procedimiento Criminal no contiene indicación alguna de que fue la intención de esta corte o de la Asamblea Legislativa al aprobarla tornar en irrenunciable el referido derecho.

Tal derecho es renunciable en Estados Unidos. *Herring* v. *New York*, 422 U.S. 853, 860 (1975). Es renunciable en Francia por acuerdo de las partes. Cappelletti, *Giustizia e Società*, Ed. di Comunità, págs. 162–63, Milán, 1972. No se nos ha citado, ni hemos hallado, autoridad alguna que exija que la renuncia se efectúe personalmente por el procesado y no por su defensor.

La lectura de la transcripción de la prueba no deja duda en nuestro ánimo que los abogados defensores y el fiscal aceptaron el procedimiento sugerido por el tribunal de instancia de que se presentasen por escrito los argumentos sobre la prueba y las cuestiones de derecho. T.E., 3ra parte, pág. 196, *supra.*

Queda por examinar el hecho de que el tribunal expresó que "Si el día del fallo desean argumentar brevemente antes del fallo yo le [*sic*] concedo tiempo para argumentar el caso." T.E., *loc. cit.* Como hemos visto, el día del fallo no se observó este procedimiento.

3. *La naturaleza de la irregularidad.*

■ Lo indicado constituyó una irregularidad, pero estimamos que los intereses del apelante no sufrieron perjuicio de tal orden que amerite la revocación de la sentencia. Si bien

no se le concedió la ocasión de argumentar oralmente antes del fallo, el procesado tuvo amplia oportunidad de informar su caso por escrito y de hacer una exposición minuciosa y detenida de una prueba sumamente extensa. También pudo comentar la prueba después del fallo y antes de la sentencia.

4. *Otros planteamientos.*

Los otros alegados errores que señala el apelante son inmeritorios. Sostiene el reo que se incurrió en error al admitir como parte de la prueba el equipo de acetileno utilizado para penetrar en la residencia de los esposos Cacho Tossas. Este equipo fue ocupado en el negocio del apelante mediante orden de allanamiento que no fue objetada por los abogados defensores.

También arguye el convicto que erró el tribunal de instancia al apreciar la prueba. La lectura de los autos nos convence de que no existe fundamento para alterar la conclusión de la sala sentenciadora.

Alega, por último, el apelante que el testimonio de un cómplice no fue debidamente corroborado, mas hubo prueba suficiente para demostrar la conexión del apelante con los hechos imputados. Véanse: *Pueblo* v. *Negrón Vélez,* 96 D.P.R. 419, 429 (1968); *Pueblo* v. *Agosto Castro,* 102 D.P.R. 441 (1974).

*Se confirma la sentencia dictada.*

El Juez Asociado Señor Hiram Torres Rigual concurre en el resultado. El Juez Asociado Señor Antonio S. Negrón García no intervino.