EL PUEBLO DE PUERTO RICO, apelado, *v.* FRANCISCO CASTRO MUÑIZ, acusado y apelante.

*Número:* CR-85-68          *Resuelto:* 1ro de abril de 1987

*Carmen Ana Rodríguez Maldonado,* de la Sociedad para Asistencia Legal, abogada del apelante; *Rafael Ortiz Carrión, Procurador General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

La menor F.L.C.C. tenía un año cuando su madre se casó con el acusado-apelante, Francisco Castro Muñiz. Siguió viviendo con su madre, su padrastro y tres hijos del nuevo matrimonio en el Residencial Luis Lloréns Torres.

El 22 de marzo de 1985, cerca de las 4:00 A.M., cuando F.L.C.C. tenía once años de edad, mientras dormía sola en su cuarto, su padrastro abrió la puerta y entró. En ese momento el acusado le bajó los pantalones y los *panties* y cometió los actos impúdicos y lascivos por los cuales fue convicto.[1] La madre entró al cuarto de su hija y sorprendió allí a su marido con su hija, F.L.C.C. Al oír la discusión que se originó, la abuela y la tía de la menor, que vivían en el mismo edificio, subieron al apartamento y atendieron la situación. Al otro día la abuela materna de la menor acudió al Cuartel de la Policía a denunciar al apelante.

---

[1] Aunque descritos por la menor y su madre en otra forma, en esencia se trató de acercamiento bucal al área de la vagina de la niña. También hubo prueba de que él, en ocasiones anteriores, le acariciaba los pechitos.

La perjudicada atestó que su padrastro le venía haciendo eso desde que tenía cinco años. No se había quejado porque él la amedrentaba. Según su testimonio esa palabra quiere decir que si ella decía algo le daba y la castigaba. (²)

■ Celebrado el juicio ante un jurado, éste rindió su veredicto unánime de culpabilidad. Después de aceptar el veredicto, el tribunal ordenó el ingreso inmediato del acusado, ". . . toda vez que este delito no tiene probatoria". (³) El 24 de octubre de 1985 el tribunal condenó al apelante a cumplir una pena de diez (10) años de presidio.

En el Escrito de Apelación, presentado por derecho propio, (⁴) se señalaron los siguientes errores:

a) No desfiló prueba Agravante.
b) Hubieron [*sic*] una serie de contradicciones.

En el alegato presentado en apoyo del recurso únicamente se imputa que el tribunal erró "en el ejercicio de su discreción, al condenar al apelante a una pena agravada de diez años por el delito imputado".

I

■ Aunque no se plantea, la prueba desfilada sostiene fuera de toda duda razonable, la convicción del apelante. La misma es robusta, contundente, convincente y está ausente de cualquier contradicción sobre los hechos esenciales. (⁵) No hay base alguna para alterar el veredicto unánime del jurado.

---

(²) A raíz de estos hechos la madre de la menor se divorció del apelante.

(³) Minuta de 17 de octubre de 1985 (Autos, pág. 32). La Ley Núm. 160 de 20 de julio de 1979, incluyó el delito de actos lascivos e impúdicos contra menores de catorce años, dentro de los que están excluidos del beneficio de suspensión de sentencia y libertad a prueba; 34 L.P.R.A. sec. 1027. Siendo ello así, el tribunal venía obligado a ordenar la encarcelación hasta que se dictara la sentencia. Regla 165 de Procedimiento Criminal.

(⁴) Su abogada, Lic. Virginia Zequeira renunció a la representación por diferencias irreconciliables con el acusado.

(⁵) La única aparente discrepancia en el testimonio de la menor perjudicada, es si los actos del apelante comenzaron cuando ella tenía cinco o nueve años.

## II

Con esos antecedentes pasamos a considerar el error señalado. La minuta del acto de dictar sentencia de 24 de octubre de 1985, refleja lo siguiente:

Llamado el caso de epígrafe en el día de hoy para el Pronunciamiento de Sentencia, comparece el Ministerio Público representado de su fiscal, Hon. Lizabeth Lipsett Campagne. El acusado (preso) está presente, asistido de la Lcda. Virginia Zequeira.

La Defensa solicita del Tribunal que se tome como prueba atenuante, el que el convicto era el única [sic] proveedor del hogar durante diez años. Que tiene tres hijas en el matrimonio. Que la perjudicada, a base de la prueba desfilada, tuvo una serie de contradicciones en su testimonio, sobre si era la primera vez o no que cometía el delito.

El Ministerio Público solicita que se tome como prueba agravant[e], el hecho de que el delito se cometió contra una menor de catorce años. Que fue s[u] hijastra, la cual crió desde los dos [sic] años de edad. Que el tipo de delito y las circunstancias en que se cometió, atentan contra la niñez y la institución de la familia. Que ese delito tiene unos designios criminales.

La defensa entiende que no hay circunstancias agravantes, a base de lo que ha dicho la Fiscal. Que el delito de por s[í], es ya un castigo, ya que no tiene probatoria.

Las partes argumentan sobre el particular.

Sometida la cuestión y no habiendo impedimento legal alguno, por el cual no deba dictarse sentencia en el día de hoy, el Tribunal procede a dictar la misma y condena al acusado en el caso G85-1890 por Actos Lascivos e Impúdicos a cumplir una pena de DIEZ (10) AÑOS DE PRESIDIO.

La defensa solicita la reconsideración de la sentencia, ya que no existen circunstancias agravantes.

El Tribunal entiende que la pena se justifica con circunstancias agravantes.

Se dispone que en este caso, tratándose de una familia donde hay otras niñas menores de edad, dado los problemas habidos en ese hogar, se ordena al Departamento de Servicios Sociales que haga una evaluación de este caso y si ya la

hizo, que visite nuevamente este hogar y le provean los servicios necesarios. Notifíquese con copia de la Minuta a la Lcda. Carmen Sonia Zayas, Secretaria de Servicios Sociales.

El delito de actos lascivos o impúdicos, Art. 105 del Código Penal, 33 L.P.R.A. sec. 4067, dispone: ([6])

Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra, será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:

(a) Si la víctima fuere menor de 14 años.

(b) Si la víctima ha sido compelida al acto mediante el empleo de fuerza física irresistible o amenaza de grave e inmediato daño corporal, acompañada de la aparente aptitud para realizarlo, o anulando o disminuyendo sustancialmente, sin su conocimiento, su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes o estimulantes o sustancias o medios similares.

(c) Si la víctima, por enfermedad o defecto mental temporero o permanente estuviere incapacitada para consentir legalmente.

(d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia.

La pena de reclusión a imponerse por este delito será de un término fijo de seis (6) años, excepto cuando se trate de la modalidad del delito contenida en el inciso (a) de esta sección. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de ocho (8) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

En la modalidad del delito a que se refiere el inciso (a) de esta sección, la pena de reclusión será por un término fijo de ocho (8) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de

---

([6])El inciso (d) fue añadido por la Ley Núm. 76 de 9 de julio de 1986.

diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.

El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida en cualquiera de las modalidades anteriormente señaladas.

Los actos constitutivos de este delito y sus efectos sobre la sociedad han sido motivo de honda preocupación. Ejemplo vivo de lo anterior es la Exposición de Motivos de la Ley Núm. 160 (1979 Leyes de Puerto Rico 431). Allí se señaló que:

> El aumento desmedido de los ataques y abusos sexuales en perjuicio de menores de catorce años ha necesitado de una respuesta más vigorosa del Estado para la protección de los más débiles. A estos efectos se ha enmendado el Artículo 105 de la Ley 115 de 22 de julio de 1974, conocida como Código Penal de Puerto Rico, con el fin de aumentar la penalidad cuando los actos lascivos e impúdicos sean cometidos en perjuicio de menores de catorce años.
>
> La naturaleza de estos actos repugna a la sociedad y para complementar la medida anterior, esta ley tiene el propósito de excluir de los beneficios de la sentencia suspendida o libertad a prueba los casos de actos lascivos o impúdicos cuando la víctima fuere menor de catorce años. Si bien la Ley de Sentencias Suspendidas tiene un fin rehabilitador, también tiene el propósito de proteger a la sociedad contra las personas convictas de delito que representen un peligro para la comunidad. Las personas que cometen actos lascivos e impúdicos contra menores de 14 años constituyen un riesgo para la tranquilidad y bienestar de nuestra juventud. Esta ley va encaminada a evitar ese riesgo.

Ese mismo día, 20 de julio de 1979, se aprobó la Ley Núm. 161 que añadió al final del párrafo introductorio una pena mayor para el caso de la modalidad (a). La Ley Núm. 57 de 3 de junio de 1983 aumentó los términos de las penas en las modalidades (b) y (c) y en la (a) la pena fija se aumentó de seis a ocho años, la pena agravada permaneció en diez años, pero la pena atenuada se aumentó de cuatro a seis años. D. Ne-

vares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 189. ([7])

■ Del anterior historial se desprende que la política pública del Estado es que los convictos de este delito deben ser tratados con mano fuerte y firme, ya que se considera como uno de los actos delictivos que más problemas causan a la sociedad y a la ciudadanía. ([8]) Claro está, ello no quiere decir, ni remotamente lo insinuamos que en todos los casos bajo la presente modalidad se debe imponer la pena agravada. Tampoco resolvemos que bajo ninguna circunstancia proceda la pena atenuada. Por el contrario, al ejercer su discreción los magistrados deben usarla en forma sabia y prudente. Al fijar la pena deben seguir los criterios establecidos en la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a tenor con los hechos y circunstancias de cada caso en particular y la situación individual de cada convicto.

Veamos si en este caso el tribunal abusó de su discreción al imponer la pena agravada.

■ La Regla 171 dispone:

El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o la parte contraria,

---

([7]) En la misma obra se nos señala que:

"Obsérvese que en los casos de las víctimas que tienen protección del ordenamiento jurídico por razón de su inmadurez mental, fuera por razón de tener catorce años o por defecto o incapacidad mental, el tipo no requiere que se emplee fuerza física ni que la persona no consienta al acto. Se trata de sujetos pasivos que el Estado tiene que proteger de actos impúdicos realizados por personas con el pleno dominio de sus facultades y capacidades físicas. No obstante, en esos casos, al igual que en el delito de violación, el acusado podría presentar una defensa de error de hecho. La misma estaría dirigida a demostrar que no hubo intención delictiva por cuanto creyó que el consentimiento que prestó la víctima era válido." D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Ed. Rev. C. Abo. P.R., 1986, págs. 190–191.

([8]) Especialmente el estigma imborrable que acarrea para las víctimas, y los daños físicos y mentales que los actos sexuales y el proceso en sí le causan a éstas. Véase *Com. de la Mujer* v. *Srio. de Justicia*, 109 D.P.R. 715, 736 (1980).

podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena.

Se podrán considerar como circunstancias atenuantes, entre otras, las siguientes:

(A) Hechos relacionados con la comisión del delito, incluyendo entre otros:

(a) el acusado fue un participante pasivo durante la comisión del delito

(b) la víctima provocó el incidente

(c) el delito fue cometido bajo circunstancias poco usuales

(d) el acusado participó en la comisión del delito bajo coacción o su conducta es parcialmente excusable por alguna otra razón que no constituye una defensa de las alegadas afirmativamente

(e) el acusado no sentía ninguna predisposición, sino que fue inducido por otros a participar en la comisión del delito

(f) el acusado trató de evitar el daño criminal causado a la persona o a la propiedad, o la cantidad apropiada fue mínima o se le hicieron amenazas

(g) el acusado creyó que tenía un derecho o una reclamación sobre la propiedad objeto del delito, o debido a otras razones equivocadas creyó que su conducta era legal

(h) el acusado fue motivado por el deseo de proveer las necesidades básicas a su familia o a sí mismo

(i) el resultado delictuoso fue producido por negligencia del acusado.

(B) Hechos relacionados con la persona del acusado, incluyendo entre otros:

(a) el acusado no tiene antecedentes

(b) edad y condiciones físicas del acusado

(c) el acusado adolecía de una condición mental o física que significativamente reducía su culpabilidad

(d) el acusado aceptó su responsabilidad en las etapas preliminares del proceso criminal

(e) el acusado no cualificaba para una sentencia suspendida

(f) el acusado restituyó a la víctima por el daño causado

(g) la conducta y reputación del acusado en su comunidad es satisfactoria.

Se podrán considerar como circunstancias agravantes, entre otras las siguientes:

(A) Hechos relacionados con la comisión del delito y con la persona del acusado, incluyendo entre otros:

(a) el delito fue de violencia, se causó grave daño corporal, o amenaza de causarlo y se evidenciaron hechos que revelan una gran crueldad, ningún respeto humano y un rechazo a las normas de la decencia

(b) el acusado utilizó un arma en la comisión del delito

(c) la víctima era particularmente vulnerable ya fuese por minoridad o incapacidad mental o física

(d) el delito envolvió más de una víctima

(e) el acusado indujo a otros a participar en la comisión del delito u ocupó una posición de líder o dominante entre los demás participantes

(f) el acusado utilizó a un menor como coparticipante

(g) el acusado amenazó a los testigos, ilegalmente evitó que los testigos asistieran a las vistas o los indujo a cometer perjurio o en cualquier otro modo obstaculizó el proceso judicial

(h) el acusado es miembro de un grupo, organización o empresa criminal organizada

(i) el delito evidencia unos designios criminales planificados

(j) el acusado recibió pago por la comisión del delito

(k) el acusado mintió durante el juicio estando bajo juramento cuando no se le ha procesado por perjurio

(l) el delito envuelve la apropiación de una gran cantidad de dinero

(m) el acusado tiene un historial delictivo.

No obstante, en todo caso se considerará como circunstancia agravante que la persona haya cometido el delito mientras disfrutaba de los beneficios de sentencia suspendida,

libertad bajo palabra, o libertad provisional bajo fianza o condicionada. (⁹) 34 L.P.R.A. Ap. II, R. 171.

■ Las circunstancias agravantes en este caso, entre otras, son las siguientes:

(a) El acusado crió a la perjudicada como si fuera su hija desde que ella tenía un año de edad.

(b) Él estaba casado con la madre de la menor y es el padre de sus tres hermanitas.

(c) La conducta delictiva del acusado se prolongó por varios años.

(d) La menor estaba impedida de evitar los avances de su padrastro por su edad, la situación familiar y por las continuas amenazas de éste.

(e) La prueba fue robusta y convincente.

---

(⁹) El último párrafo fue incorporado por la Ley Núm. 23 de 12 de mayo de 1986. Esta regla debe verse en armonía con el Art. 60 del Código Penal que establece lo siguiente:

"Los objetivos generales que informan la imposición de la pena son los siguientes:

"(a) La protección de la sociedad y la prevención de la delincuencia.

"(b) El castigo justo al autor del delito.

"(c) La rehabilitación moral y social del autor dentro de los recursos disponibles del Estado.

"(d) El logro de la uniformidad en la imposición de la pena.

"(e) La consideración de la naturaleza disuasiva de la pena.

"Dentro de los límites establecidos por la ley, las penas se fijarán de acuerdo a la mayor o menor gravedad del hecho cometido y tomando en consideración, entre otras, las siguientes circunstancias:

"(a) La naturaleza de la acción u omisión delictuosa.

"(b) Los medios empleados.

"(c) La importancia de los deberes transgredidos.

"(d) La extensión del daño [o] del peligro causado.

"(e) La edad, educación, historial social y reputación del autor.

"(f) La conducta relacionada con el delito antes, durante y después de la comisión del mismo.

"(g) La calidad de los móviles del hecho.

"(h) La conducta de la víctima relacionada con la transacción delictuosa.

"Las relaciones, circunstancias y cualidades personales que aumenten o disminuyan la pena, afectará solamente a la persona a quien correspondan." 33 L.P.R.A. sec. 3284.

Por otro lado, las circunstancias que pueden considerarse como atenuantes son mínimas.

Véase que las anteriores circunstancias están directamente contempladas en los subincisos (a), (c) e (i) del párrafo tercero de la Regla 171 de Procedimiento Criminal.

■ Por no haberlo solicitado las partes, y en vista de que en este caso no existió alguna controversia real sobre un hecho material que requería la presentación de prueba, no había necesidad de celebrar la vista previa a la sentencia que permite la Regla 162.4 de Procedimiento Criminal adicionada por la Sec. 2 de la Ley Núm. 103 de 4 de junio de 1980.

Ante ese cuadro resolvemos que el tribunal no abusó de su discreción al imponer la pena agravada. La sentencia resulta ser justa.

## III

Como parte de su alegación de que la pena agravada resulta ser excesiva, el apelante argumenta que:

Del expediente del caso y la exposición narrativa de la prueba certificada y aprobada, no surgen las razones que tuvo el Tribunal para imposición de tal pena (Regla 162 de Procedimiento Criminal). No explicó qué motivos la inclinaron a ejercer su discreción desviándose de la pena fija de ocho (8) años que señala el estatuto.

Antes que nada, lo que solicita el apelante es que reduzcamos la pena. No sostiene que las circunstancias ameritan que se devuelva el caso para que se dicte una nueva sentencia. Pero independientemente de ello, y atendiendo la posición asumida en la opinión disidente, consideraremos el planteamiento.

■ La Sec. 1 de la Ley Núm. 103 de 4 de junio de 1980, añadió el siguiente párrafo a la Regla 162 de Procedimiento Criminal, 34 L.P.R.A. Ap. II:

El tribunal al tiempo de imponer sentencia deberá explicar verbalmente o por escrito las razones para la imposición de la sentencia.

En primer lugar, de los autos no se desprende que la representación legal del apelante le exigiera o solicitara a la magistrado de instancia que cumpliera estrictamente con dicha directriz.

Al dictarse la sentencia, la defensa solicitó su reconsideración por el único fundamento de que no existían circunstancias agravantes. No se le advirtió al tribunal que no había explicado las razones para la imposición de la sentencia. Tampoco se invocó la Regla 162 de Procedimiento Criminal cuando el tribunal explicó que entendía que la pena se justificaba con circunstancias agravantes.

■ Bajo esas circunstancias, el planteamiento resulta tardío. El juicio criminal, al igual que todo proceso judicial, no es un juego o contienda en el cual los participantes se guardan sus mejores cartas o posiciones para una etapa posterior y luego de perder el juego, sorpresivamente protestar el resultado. Resulta claramente injusto con los jueces de instancia, el plantear por primera vez en apelación que una omisión permitida o consentida, da lugar a la revocación de la sentencia.

De todas maneras no amerita devolver el caso a instancia. Estamos en condiciones idóneas de resolver, como lo hemos hecho, que el tribunal no abusó de su discreción al dictar la sentencia apelada. De haberse cometido el error, el mismo no resulta perjudicial.

## IV

A pesar de que el acusado-apelante no lo plantea, en la opinión disidente se propone que erró el foro de instancia al sentenciar al acusado sin contar con el informe presentencia a que hace referencia el Art. 59 del Código Penal, 33 L.P.R.A. sec. 3283. Este artículo, que entró en vigor el 22 de septiembre

de 1984, Ley Núm. 26 de 25 de septiembre de 1983 (33 L.P.R.A. sec. 4628), dispone que:

> La imposición de la pena requerirá un informe pre-sentencia, el cual será mandatorio en los delitos graves y a discreción del tribunal en los delitos menos graves. Estos informes estarán a disposición de las partes.
>
> No se impondrá ninguna limitación a la naturaleza de la información concerniente al historial completo, carácter y conducta de la persona convicta que el tribunal pueda considerar a los efectos de imponer sentencia.

Por otro lado la Regla 162.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que está en vigor desde el 3 de mayo de 1981, Ley Núm. 103 de 4 de junio de 1980, fija el siguiente procedimiento:

> El tribunal, antes de dictar sentencia en los siguientes casos, deberá tener ante sí un informe que le haya sido rendido, después de haberse practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona convicta, que le permita emitir una decisión racional de sentencia:
>
> (1) En todos los delitos graves, excepto asesinato en primer grado.
>
> Este Informe Pre-Sentencia será preparado por el Programa de Libertad a Prueba y Libertad bajo Palabra de la Administración de Corrección.
>
> (2) En los delitos menos graves.
>
> El tribunal utilizará en los delitos menos graves como informe pre-sentencia el "Formulario Corto de Información" requerido por la Regla 162.2 excepto cuando las circunstancias particulares del caso ameriten información más amplia, en que podrá solicitarse, si a juicio del tribunal es necesaria, alguna evaluación adicional a la Administración de Corrección.
>
> Los informes pre-sentencia se tramitarán en el plazo más breve posible y de no estar disponible el informe dentro de los términos que establece la Regla 162, el tribunal pospondrá el acto de dictar sentencia a fin de recibir dicho informe.

Nada de lo dispuesto en esta regla se entenderá que limita la facultad del tribunal para enmendar su sentencia conforme a lo dispuesto en estas reglas.

El tribunal dará acceso a los informes pre-sentencia a los acusados o peticionarios, a sus abogados y al ministerio fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba.

Sólo se mantendrá como confidencial aquella información que hubiere sido prestada por personas particulares a quienes se les hubiere ofrecido dicha garantía.

Estas disposiciones están complementadas por las Reglas 162, 162.3, 162.4 y 162.5 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. ([10])

---

([10]) Las Reglas 162.3, 162.4 y 162.5 de Procedimiento Criminal leen así:

"REGLA 162.3. NOTIFICACIÓN, OBJECIONES

"Una vez rendidos los informes pre-sentencia, el tribunal notificará prontamente ese hecho a las partes quienes podrán objetarlos dentro del término de diez días, a contar desde su notificación.

"Se especificará qué partes del informe se pretende controvertir mediante la presentación de prueba. Si los informes fueren objetados, el tribunal celebrará una vista.

"REGLA 162.4. SENTENCIA; PRUEBA SOBRE CIRCUNSTANCIAS ATENUANTES O AGRAVANTES

"Tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Si de las alegaciones sometidas surgiere que existe controversia real sobre un hecho material que requiriere la presentación de prueba, entonces el tribunal celebrará una vista en el más breve plazo posible, en la cual:

"(a) El fiscal podrá presentar prueba de circunstancias agravantes que a su juicio justifiquen que se dicte una sentencia rigurosa o el que no se deban suspender los efectos de la sentencia o, en caso contrario, que se impongan condiciones estrictas.

"(b) El acusado podrá presentar prueba de circunstancias atenuantes que a su juicio justifiquen que se dicte una sentencia benigna o que se suspendan los efectos de la misma.

"REGLA 162.5. INFORMES PRE–SENTENCIA, CIRCUNSTANCIAS ATENUANTES O AGRAVANTES; CONSOLIDACIÓN DE VISTA

"Si una parte presentare una moción bajo la Regla 162.1 y ella o la otra parte presentare otra moción bajo la Regla 162.4 o en la misma mo-

En *Pueblo* v. *Bou Nevárez*, 111 D.P.R. 179, 183–184
(1981), señalamos que:

¿Qué significa esta curiosa situación? ¿Significa que cada
vez que no se emendó a tiempo la legislación correspon-
diente para posponer su vigencia, creándose el inevitable
lapso, toda persona sentenciada durante su término tiene
derecho a que se revoque su condena y se le sentencie nueva-
mente? A nuestro juicio no. No podemos imputarle a la
Asamblea Legislativa, conforme el historial de las dos dis-
posiciones discutidas, el *brutum fulmen* de posponer la vi-
gencia del Art. 59 del Código Penal, lo que tiene el efecto
de no hacer disponible el informe presentencia, y a la par
ordenar lo contrario. Cuando existen leyes directamente con-
trapuestas es nuestro deber examinar las circunstancias que
rodean su aprobación para determinar el verdadero propó-
sito legislativo. A veces es posible armonizarlas; en otras
ocasiones no. La repetida posposición de la vigencia de tanto
el Art. 59 como la de la Regla 162.1 demuestra la intención
de no poner en vigor el principio que ambas disposiciones
encarnan hasta tanto se cumplan ciertas condiciones pre-
vias que a juicio de la Asamblea Legislativa deben mediar.
Esta conclusión se refuerza por la nueva posposición que
sufre en 1980 la Regla 162.1 después del último hiato ocu-
rrido. Las circunstancias en que se producen éste y otros
lapsos claramente apuntan a que su creación se debió más
a la inadvertencia y el descuido que a la intención deliberada
de poner en vigor los principios representados por las dis-
posiciones objeto de análisis. Tales hiatos no ofrecen funda-
mento suficientemente sólido para reclamar que todos los
individuos sentenciados en Puerto Rico durante esos inter-
valos sean resentenciados.

---

ción acumulare reclamos bajo ambas reglas, el tribunal, a menos que no
fuere factible, considerará ambos asuntos en una misma vista." 34 L.P.R.A.
Ap. II.

Leídas en conjunto, concluimos que la solicitud sobre prueba de circuns-
tancias agravantes o atenuantes puede considerarse antes o después de reci-
birse, en los casos apropiados, el informe presentencia.

En el escolio 6 de dicha opinión, señalamos que:

No nos estamos pronunciando en este caso sobre la situación de derecho existente después de la vigencia del sistema de sentencia determinada. Íd., pág. 188.

■ Por las razones que expondremos más adelante, tampoco tenemos que expresarnos sobre si el requisito de que se someta el informe presentencia es mandatorio y automático, después de la vigencia del sistema de sentencia determinada. O de serlo, si el mismo es extensivo a los casos, como el presente, en que el uso del privilegio de la sentencia suspendida está prohibido.

■ La razón para abstenernos de pronunciarnos es evidente. En primer lugar, no se plantea en este recurso. Aunque ello no resulta ser un impedimento absoluto, resolvemos que el acusado-apelante renunció al mismo al no plantearlo en ninguna de las etapas del juicio. Veamos.

Al recibirse el veredicto y fijarse la fecha para dictar la sentencia, no se le requirió al tribunal que ordenara el estudio y preparación del informe. Tampoco se hizo solicitud por escrito antes de la vista de pronunciamiento de sentencia. Más aún en la vista sobre sentencia la defensa argumentó que procedía dictar una pena atenuada. Para sostener su posición no solicitó que se pospusiera el acto hasta que se rindiera el informe presentencia. Tampoco lo hizo al pedir la reconsideración. En ningún momento le advirtió al tribunal que no había cumplido con la obligación impuesta por el Art. 59 y la Regla 162.1. Desconocemos las razones para esta actitud. No podríamos precisarlas sin entrar en el campo de la especulación. La más fácil de rechazar es que su abogada desconocía que dicho procedimiento estaba vigente. Es más plausible entender que no se hizo el planteamiento por tener la abogada el criterio jurídico de que los informes presentencia no son necesarios o mandatorios en los casos en que el delito no está cubierto por la ley de sentencias suspendidas. También es probable que

entendiera que el informe presentencia, en lugar de beneficiarlo, lo iba a perjudicar y no quiso darle más armas y municiones al Ministerio Público. [11] En adición, la renuncia en estos casos puede responder al deseo de evitar el atraso que ocasionaría a los procedimientos esperar por el informe presentencia en todos los casos de delito grave. [12]

En resumen resolvemos que el apelante renunció a su derecho estatutario a solicitar que se rindiera un Informe Presentencia; [13] *Pueblo* v. *Meléndez Maldonado,* 109 D.P.R. 109 (1979) (Derecho Constitucional a dirigirse oralmente al jurado o al juez al terminar la prueba de cargo es renunciable). Por otro lado, de los autos no surge qué perjuicios, si alguno, se le causaron al apelante por esta omisión. *Pueblo* v. *Burgos Hernández,* 113 D.P.R. 834 (1983) (omisión de efectuar la alocución que dispone la Regla 166 de Procedimiento Criminal).

*Se confirmará la sentencia apelada.*

---

[11] Estos informes pueden perjudicar a los acusados que van a solicitar una pena atenuada o fianza en apelación. Notamos que las Reglas 165 y 198 de Procedimiento Criminal aparentan ser incompatibles. El convicto de un delito en que no puedan suspenderse los efectos de la sentencia, se le cancela la fianza tan pronto se rinde el fallo condenatorio, Regla 165 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Sin embargo, después que se le dicta la sentencia y apela tiene derecho a solicitar que se le fije fianza en apelación. En el primer caso el tribunal no tiene discreción alguna, en el segundo la tiene.

[12] Posibilidad recogida en el Informe del Comité sobre Normas y Objetivos para Acelerar el Trámite de Casos en el Tribunal de Primera Instancia, 1984, Vol. I, págs. 205-206.

[13] Por vía de *dictum* en *Pueblo* v. *Torres Estrada,* 112 D.P.R. 307 (1982), señalamos que el informe bajo el Art. 59 es mandatorio. Ello no quiere decir que el derecho es absoluto e irrenunciable. Contrario a lo resuelto en *Pueblo* v. *Rivera Rodríguez,* 112 D.P.R. 149 (1982) (se anuló sentencia que concede probatoria sin tener el informe del Oficial Probatorio), aquí la omisión no afectó la legalidad de la sentencia. Véase opinión disidente del Juez Asociado Señor Irizarry Yunqué en *Pueblo* v. *Rivera Rodríguez, supra,* pág. 153.

El Jüez Asociado Señor Hernández Denton concurre en el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez disiente sin opinión escrita. El Juez Asociado Señor Rebollo López emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Disentimos, *no* porque entendamos que la prueba presentada no sea suficiente en derecho para sostener la convicción decretada; *no* porque seamos del criterio que el delito cometido por el apelante no sea, en palabras de la opinión mayoritaria, "motivo de honda preocupación" para la sociedad en que convivimos; *no* porque no compartamos la opinión de una mayoría de los integrantes de este Tribunal de que "la política pública del Estado es que los convictos de este delito deben ser tratados con mano fuerte y firme"; *no* porque creamos que el apelante en el presente caso no amerita una pena de reclusión de diez años de presidio.

Disentimos, llana y sencillamente, porque somos del criterio que la sentencia dictada en el presente caso por el Tribünal Superior de Puerto Rico, Sala de San Juan, es nula e ilegal por razón de que *la ley vigente* en nuestra jurisdicción *exige*, como requisito *sine qua non* para que los tribunales de instancia puedan dictar sentencia, que dichos foros tengan ante sí un *informe presentencia* antes de proceder a la imposición de la misma *en todo caso de delito grave*.

La referida legislación no representa la "concesión de un derecho" como tal al convicto de delito grave, sino que es un "deber u obligación" que nuestro legislador entendió procedente imponerle a los tribunales de instancia, *cuya vigencia y obligatoriedad es responsabilidad de este Tribunal reconocer*, sin que sea necesario "expresar —porque no nos atañe— opinión sobre la sabiduría o conveniencia del estatuto". *Cervece-*

*ría Corona, Inc.* v. *Srio. Obras Públicas,* 97 D.P.R. 44, 53 (1969) ; *Pueblo* v. *Saldaña,* 69 D.P.R. 711 (1949).

## I

El apelante fue declarado culpable y convicto —mediante veredicto unánime rendido por el jurado que intervino en el proceso que se le celebrara— del delito de "acto[s] lascivo[s] o impúdico[s]", (¹) cometido en la persona de una niña de once (11) años de edad, la cual era su hijastra.

El día del acto de la imposición de la sentencia, ocurrió lo siguiente:

> Llamado el caso de epígrafe en el día de hoy para el Pronunciamiento de Sentencia, comparece el Ministerio Público representado de su fiscal, Hon. Lizabeth Lipsett Campagne. El acusado (preso) está presente, asistido de la Lcda. Virginia Zequeira.
>
> La Defensa solicita del Tribunal que se tome como prueba atenuante, el que el convicto era el únic[o] proveedor del hogar durante diez años. Que tiene tres hijas en el matrimonio. Que la perjudicada, a base de la prueba desfilada, tuvo una serie de contradicciones en su testimonio, sobre si era la primera vez o no que cometía el delito.
>
> El Ministerio Público solicita que se tome como prueba agravant[e], *el hecho de que el delito se cometió contra una menor de catorce años. Que fue s[u] hijastra, la cual crió desde los dos [sic] años de edad. Que el tipo de delito y las circunstancias en que se cometió, atentan contra la niñez y la institución de la familia. Que ese delito tiene unos designios criminales.*
>
> La defensa entiende que no hay circunstancias agravantes, a base de lo que ha dicho la Fiscal. Que el delito de por sí, es ya un castigo, ya que no tiene probatoria.
>
> Las partes argumentan sobre el particular.
>
> *Sometida la cuestión y no habiendo impedimento legal alguno, por el cual no deba dictarse sentencia en el día de hoy, el Tribunal procede a dictar la misma y* condena al

---

(¹) Art. 105 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4067.

acusado en el caso G85-1890 por Actos Lascivos e Impú-
dicos a cumplir una pena de DIEZ (10) AÑOS DE PRE-
SIDIO.

La defensa solicita *la reconsideración* de la sentencia, ya
que no existen circunstancias agravantes.

*El Tribunal entiende que la pena se justifica con circuns-
tancias agravantes.* (Énfasis suplido.) ([2])

En apelación —como único señalamiento de error— se le
imputa al Tribunal Superior de Puerto Rico, Sala de San
Juan, lo siguiente:

Erró la Honorable Sala Sentenciadora en el ejercicio de
su discreción al condenar al apelante a una pena de 10 años
por el delito imputado.

Dejaríamos sin efecto la sentencia apelada y devolveríamos
el caso al foro de instancia *para que el apelante sea resenten-
ciado.* Veamos por qué.

## II

Nos enfrentamos nuevamente a la problemática referente
a la fecha de vigencia de las disposiciones del Art. 59 del Có-
digo Penal de Puerto Rico, 33 L.P.R.A. sec. 3283, ([3]) y las de
la Regla 162.1 de Procedimiento Criminal, ([4]) 34 L.P.R.A. Ap.
II, la cual situación ha sido objeto de atención específica por
este Tribunal en los casos de *Pueblo* v. *Bou Nevárez,* 111
D.P.R. 179 (1981) y *Pueblo* v. *Torres Estrada,* 112 D.P.R.
307 (1982).

El citado Art. 59 dispone:

*La imposición de la pena requerirá un informe pre-
sentencia, el cual será mandatorio en los delitos graves* y a
discreción del tribunal en los delitos menos graves. Estos
informes estarán a disposición de las partes.

---

([2]) Minuta del día 24 de octubre de 1985.

([3]) Aprobado por la Ley Núm. 115 de 22 de julio de 1974.

([4]) Adicionada mediante la Ley Núm. 172 de 23 de julio de 1974.

No se *impondrá* ninguna limitación a la naturaleza de la información concerniente al historial completo, carácter y conducta de la persona convicta que el tribunal pueda considerar a los efectos de imponer sentencia. (Énfasis suplido.)

Por su parte, la referida Regla 162.1 establece:

REGLA 162.1. INFORME PRE–SENTENCIA

El tribunal, antes de dictar sentencia en los siguientes casos, deberá tener ante sí un informe que le haya sido rendido, después de haberse practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona convicta, que le permita emitir una decisión racional de sentencia:

(1) En todos los delitos graves, excepto asesinato en primer grado.

Este informe pre-sentencia será preparado por el Programa de Libertad a Prueba y Libertad bajo Palabra de la Administración de Corrección.

(2) En los delitos menos graves.

El Tribunal utilizará en los delitos menos graves como informe pre-sentencia el "Formulario Corto de Información" requerido por la Regla 162.2 excepto cuando las circunstancias particulares del caso ameriten información más amplia, en que podrá solicitarse, si a juicio del tribunal es necesaria, alguna evaluación adicional a la Administración de Corrección.

Los informes pre-sentencia se tramitarán en el plazo más breve posible y de no estar disponible el informe dentro de los términos que establece la Regla 162, el tribunal pospondrá el acto de dictar sentencia a fin de recibir dicho informe.

Nada de lo dispuesto en esta regla se entenderá que limita la facultad del tribunal para enmendar su sentencia conforme a lo dispuesto en estas reglas.

El tribunal dará acceso a los informes pre-sentencia a los acusados o peticionarios, a sus abogados y al ministerio fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba.

Sólo se mantendrá como confidencial aquella información que hubiere sido prestada por personas particulares a quie-

nes se les hubiere ofrecido dicha garantía. 34 L.P.R.A. Ap. II, R. 162.1.

No obstante dichas disposiciones legales estar íntimamente relacionadas entre sí, la fecha de vigencia de las mismas fueron objeto —en forma no uniforme— de innumerables extensiones por parte de nuestra Asamblea Legislativa, lo que ha causado una enorme confusión y desasosiego en su aplicación. *La vigencia de la Regla 162.1 fue pospuesta en cuatro ocasiones*: Ley Núm. 3 de 17 de diciembre de 1974; Ley Núm. 7 de 15 de julio de 1975; Ley Núm. 16 de 21 de julio de 1977 y Ley Núm. 103 de 4 de junio de 1980. *El Art. 59 (33 L.P.R.A. sec. 3283) por otro lado, fue pospuesto en seis ocasiones*: Ley Núm. 146 de 3 de junio de 1975; Ley Núm. 17 de 21 de julio de 1977; Ley Núm. 76 de 18 de junio de 1979; Ley Núm. 100 de 4 de junio de 1980; Ley Núm. 8 de 9 de junio de 1981 y Ley Núm. 26 de 25 de septiembre de 1983.

Al enfrentarnos a esta situación por primera ocasión, en *Pueblo* v. *Bou Nevárez*, ante, expresamos que la adición de la Regla 162.1 de Procedimiento Criminal —realizada un día después de aprobarse el Código Penal de 1974— había tenido el propósito "a todas luces [de] complementar lo dispuesto por el Art. 59 del Código". ([5]) No obstante reconocer que la "fecha de vigencia del Art. 59 no marcha enteramente a compás con las de la Regla 162.1", y que, por lo tanto, se habían producido ocasiones en que una había estado vigente y la otra no, resolvimos que ello no significaba que toda persona sentenciada durante "esos períodos de tiempo" en que ello así había sucedido tenía derecho a que se revocara su condena y se le sentenciara nuevamente. Expusimos que la *"repetida posposición de la vigencia de tanto el Art. 59 como la de la Regla 162.1* demuestra *la intención* de no poner en vigor *el principio que ambas disposiciones encarnan* hasta tanto se cumplan *ciertas*

---

([5])*Pueblo* v. *Bou Nevárez*, 111 D.P.R. 179, 181 (1981).

648

*condiciones previas que a juicio de la Asamblea Legislativa deben mediar".* (Énfasis suplido.) (⁶)

En el caso de *Pueblo v. Torres Estrada, ante,* nos encontramos ante la situación en que a la fecha que fue sentenciado el allí apelante estaba vigente la Regla 162.1 de Procedimiento Criminal pero no el Art. 59 del Código Penal. Expresamos que en vista de ello era "nuestra obligación armonizar, si posible, la aparente contradicción. Nos parece que ello es factible si consideramos *que el Art. 59 se refiere específicamente al informe antes de que se pronuncie la sentencia contra el acusado, haciéndolo mandatorio para delitos graves* y discrecional para delitos menos graves, *mientras que la Regla 162.1,* por su relación con otras disposiciones, *puede interpretarse que aplica al informe que es requerido del Oficial Probatorio* para la determinación sobre si se concede al acusado el beneficio de suspender los efectos de la sentencia impuesta". (Énfasis suplido.) (⁷)

En otras palabras, no obstante resolver que las dos mencionadas disposiciones reglamentan "situaciones diferentes", *desde ese momento reconocimos que el Art. 59 —en la fecha que entrara en vigor— tendría la consecuencia inescapable de obligar a los tribunales de instancia a tener ante sí, para poder proceder a dictar sentencia en casos de delitos graves, un informe presentencia.*

A la fecha en que el aquí apelante fue sentenciado —24 de octubre de 1985— *estaban vigentes ambas disposiciones legales*: la Regla 162.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, desde el 3 de mayo de 1981 y el Art. 59 del Código Penal desde el 22 de septiembre de 1984. *Ello es indicativo de que nuestra Asamblea Legislativa finalmente entendió que ya llegó el momento en que se debe* "poner en vigor el principio que ambas disposiciones encarnan". *Pueblo v. Bou Nevárez,*

---

(⁶)*Pueblo v. Bou Nevárez, ante,* págs. 183–184.

(⁷)*Pueblo v. Torres Estrada,* 112 D.P.R. 307, 311 (1982).

ante, pág. 183. Ciertamente no nos corresponde a nosotros pasar juicio sobre la sabiduría de dicha decisión. *Cervecería Corona, Inc.* v. *Srio. Obras Públicas,* ante. Por otro lado, el poder ejecutivo ha tenido aviso y tiempo suficiente para tomar las medidas necesarias para poderle dar cumplimiento a este mandato.

Mediante la decisión que hoy emite una mayoría del Tribunal, sin embargo, se resuelve que no existe necesidad de que este Tribunal se exprese "sobre si el requisito de que se someta el informe presentencia es mandatorio y automático" por razón de que la cuestión "no se plantea en este recurso", y que aun cuando "ello no resulta ser impedimento absoluto, resolvemos que el acusado-apelante *renunció al mismo al no plantearlo* en ninguna de las etapas del juicio". (Énfasis suplido.) En otras palabras —y aun cuando así específicamente no se expresa— la opinión mayoritaria considera que el Art. 59 lo que establece es un "derecho", y que como "derecho estatutario", el mismo se entiende renunciado al no ser reclamado afirmativamente por el acusado. Véase *Morales Narváez* v. *Gobernador,* 112 D.P.R. 761 (1982).

### III

¿Es ello correcto? ¿Se trata realmente de un "derecho" que, como "derecho" al fin, siempre es renunciable? Creemos que no; veamos por qué:

A. Los informes rendidos por la Comisión de lo Jurídico de ambas Cámaras Legislativas relativos al proyecto de ley que en el año de 1974 finalmente se convirtió en el vigente Código Penal de Puerto Rico, demuestra que el "producto final" fue el resultado de largos años de estudio, análisis y esfuerzos; proceso que comenzó en el año de 1967. Se expresa en dichos informes que la "Parte General" del referido cuerpo legal incluye "las normas *básicas y rectoras* de todo el ordenamiento penal". (Énfasis suplido.) 33 L.P.R.A. sec. 3001.

Resulta, en nuestra opinión, significativo que el citado Art. 59 se encuentra precisamente en esa "parte general" y que el legislador consideró necesario incluirlo en el Código Penal propiamente y no como una disposición adicional en el cuerpo de reglas que rige el procedimiento criminal.

Por otro lado, resulta igualmente procedente enfatizar que el *principio* de que la pena a ser impuesta a un convicto de delito debe hacerse "sobre bases individuales" y que se debe facultar "a los tribunales y las instituciones del estado concernidas para que así puedan hacerlo . . ." permea *todo* el vigente Código Penal; lo cual, a su vez, constituye *la razón de ser* del informe presentencia que *mandatoriamente* requiere el referido Art. 59 en *todo* caso de delito grave. Véase Informes de las Comisiones sobre el Anteproyecto de Código Penal, 33 L.P.R.A. sec. 3001.

B. Como es sabido, *la regla de interpretación contenida en el Art. 14 del Código Civil de Puerto Rico* —a los efectos de que ante el lenguaje claro, explícito y libre de toda ambigüedad o duda de un estatuto, no cabe menospreciar la letra de la ley bajo el pretexto de cumplir su espíritu, máxime cuando el espíritu o intención del estatuto y su letra son la misma cosa— *es de aplicación lo mismo a las leyes penales que civiles.* Véanse: *Meléndez* v. *Tribunal Superior,* 90 D.P.R. 656 (1964); *Román* v. *Superintendente de la Policía,* 93 D.P.R. 685 (1966). Debe mantenerse presente, en adición, que el texto claro de una ley es la expresión por excelencia de la intención legislativa. *Rodríguez Rodríguez* v. *Gobernador,* 91 D.P.R. 101 (1964); *López* v. *Muñoz, Gobernador,* 81 D.P.R. 337 (1959).

C. Dispone el citado Art. 59 del Código Penal, en lo pertinente, que: "La imposición de la pena *requerirá* un informe pre-sentencia, el cual *será mandatorio* en los delitos graves y a *discreción del tribunal* en los delitos menos graves." (Énfasis suplido.) 33 L.P.R.A. sec. 3283.

D. El término "mandatorio" procede de la palabra "mandar", la cual según el *Diccionario de la Real Academia de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 864, significa, entre otros, *"imponer* un precepto . . . , manifestar uno *la voluntad de que se haga una cosa".* (Énfasis suplido.) La palabra "discreción" por otro lado, según la misma fuente, significa, entre otros, ". . . [a]l *arbitrio* o buen juicio de uno". (Énfasis suplido.) *Diccionario de la Real Academia de la Lengua Española, op. cit.,* Vol. I, pág. 505.

E. Debido a lo anteriormente reseñado es que hemos expresado, sin ambages de clase alguna, que cuando la ley ordena que *mandatoriamente* se siga un procedimiento en particular, así tiene "el juez que ordenarlo". *Pueblo* v. *González de Demora,* 92 D.P.R. 75, 81 (1965).

F. Como hemos visto, el citado Art. 59 requiere *mandatoriamente* un informe presentencia en todo caso de delito grave. Procede que nos cuestionemos, ¿a *quién* va dirigido el requerimiento? La contestación es palpablemente sencilla: al que impone la pena. ¿Quién impone la pena? La respuesta es obvia: el tribunal.

¿Se trata meramente de un "derecho" que se le concede al convicto o, por el contrario, de una *obligación* con la cual tiene el tribunal que cumplir? Somos del criterio que nos encontramos ante un "deber" que se le impone al tribunal, *el cual éste tiene que mandatoriamente realizar.* Esto es, el estatuto claramente *exige* del tribunal que —como *condición previa* o *requisito sine qua non*— tenga ante sí un informe presentencia antes de proceder a dictar la misma en todo caso de delito grave; el cual informe le permitirá a dicho foro "individualizar" la pena a ser impuesta. (8) Dicho "deber" es uno "minis-

---

(8) No hay duda de que se puede argumentar que el informe presentencia que requiere el Art. 59 se "justificaba más" bajo el antiguo sistema de sentencia indeterminada por cuanto bajo el mismo las penas a imponerse podían variar considerablemente.

terial" que el legislador entendió procedente imponerle al juez, el cual no admite discreción en su ejercicio, y que resulta mandatorio e imperativo. *Cf. Pagán* v. *Towner*, 35 D.P.R. 1, 3 (1926); *Lutz* v. *Post Gobernador de Puerto Rico*, 14 D.P.R. 860, 875 (1908).

¿Puede un acusado-convicto *"renunciar"* a un deber u obligación que la ley *mandatoriamente* le impone al tribunal? ¿Se debe entender que el tribunal queda excusado de cumplir con un claro mandato legislativo que le requiere y exige hacer algo como condición para dictar sentencia meramente porque el convicto no le reclamó afirmativamente que cumpliera con ese deber que el legislador específicamente le impuso? La posición que asume una mayoría de los integrantes de este Tribunal en el presente caso —a los efectos de que no obstante el estatuto requerir el informe en forma mandatoria, por tratarse de un "derecho", éste puede ser "renunciado" por el convicto— nos puede llevar, inclusive, al absurdo. Como es sabido, y a manera de ejemplo, la Ley Núm. 106 de 4 de junio de 1980 enmendó la Regla 180 de Procedimiento Criminal a los efectos, *según ello surge de su exposición de motivos*, de establecer "como *mandatoria* la imposición de una *sentencia consecutiva* cuando una persona que está acusada por la comisión de un delito grave y que se encuentre en libertad bajo fianza, comete un delito nuevamente". (Énfasis suplido.) 1980 Leyes de Puerto Rico 367. Al amparo de la teoría que sustenta una mayoría del Tribunal, el juez de instancia que tenga que sentenciar bajo estas circunstancias a un convicto de delito po-

---

Debemos mantener presente, sin embargo, que aun bajo el sistema actual de sentencia determinada el tribunal tiene tres (3) alternativas u opciones al sentenciar a una persona por la comisión de todo delito grave, excepto en el caso de asesinato en primer grado.

En adición, es importante recordar que el legislador, al aprobar el sistema de sentencia determinada en el 1980, *no derogó el Art. 59;* por el contrario, lo que hizo fue posponer su vigencia. Ello, a nuestro juicio, es un *claro indicador* de su intención y deseo de que dicha disposición legal forme parte de nuestro ordenamiento jurídico.

dría no tener que cumplir con el *deber* u *obligación* que mandatoriamente le impone la mencionada Ley Núm. 106 si el convicto, en palabras de la opinión mayoritaria, renuncia "al mismo al no plantearlo en ninguna de las etapas del juicio".

Somos de la opinión, insistimos, que los *términos inequívocos* en que está concebido el citado Art. 59 constituyen un *claro mandato legislativo*, los cuales no permiten ni otra interpretación ni otra solución en el presente caso.

Definitivamente la Asamblea Legislativa ha entendido procedente —la sabiduría de la cual, repetimos, no nos corresponde cuestionar— *exigir* que en todo caso de delito grave se realice *una investigación* y se le someta al tribunal un *informe* que le permita a dicho foro "individualizar" la pena. Entendemos que ese "deber" que se le ha impuesto a los tribunales de instancia representa una obligación que se ha *autoimpuesto* el Estado a los fines de que se lleve a efecto y se implante la "filosofía penal" que permea el Código Penal de 1974; situación que resulta en beneficio de la sociedad puesto que tendrá el resultado deseado de que a cada convicto de delito grave le será impuesta la pena que se merece.

En vista de todo lo antes expresado, somos de la opinión que la sentencia dictada en el presente caso, sin que el tribunal sentenciador haya contado con un informe presentencia, es nula e ilegal; teniendo este Tribunal en esta etapa de los procedimientos no sólo el deber de así reconocerlo, sino la facultad y el poder de ordenar, inclusive *sua sponte*, que el apelante sea resentenciado. Véanse: *Pueblo* v. *González de Demora*, ante; *González De Jesús* v. *Jefe Penitenciaría*, 90 D.P.R. 31 (1964); *Pueblo* v. *Lozano Díaz*, 88 D.P.R. 834 (1963).

IV

Procede que nos expresemos, en adición, sobre si el tribunal de instancia, al momento de dictar sentencia, cumplió o no con las disposiciones de la Regla 162 de Procedimiento Criminal, según ésta ha sido enmendada. Consideramos necesario

expresarnos sobre la materia por cuanto ello puede evitar que nuestros tribunales de instancia cometan errores en el futuro inmediato.

Como es sabido, nuestra Asamblea Legislativa tuvo a bien establecer en el año de 1980 el sistema de sentencia determinada, Ley Núm. 100 de 4 de junio de 1980. Se estableció que:

> Cuando el tribunal condenare a pena de reclusión dictará una sentencia determinada que tendrá término específico de duración. En los casos de delito grave se impondrá el término fijo establecido por ley para el delito. *De existir circunstancias agravantes o atenuantes, deberá aumentar o disminuir la pena fija dentro de los límites establecidos en la ley para el delito.* En estos casos el término de reclusión a imponerse también será fijo. (Énfasis suplido.) 33 L.P.R.A. sec. 3282.

En la Exposición de Motivos de la referida Ley Núm. 100 se expresó que el anterior sistema de sentencia indeterminada era uno que propiciaba la disparidad en las sentencias. Se entendió que con el nuevo sistema se lograría un mayor grado de certeza en las penas impuestas, lo cual se espera opere "como factor disuasivo de futura conducta criminal por parte de los delincuentes potenciales y propicie uniformidad de manera que cada delito se castigue de acuerdo con su gravedad".[9]

La aprobación de la mencionada Ley Núm. 100 requirió enmiendas al Código Penal de Puerto Rico,[10] a la Ley Orgánica de la Administración de Corrección,[11] y a las Reglas de Procedimiento Criminal.[12] En cuanto a estas últimas —en específico y en lo pertinente— se enmendó la mencionada Regla 162, la cual lee ahora como sigue:

---

[9] Véase Exposición de Motivos de la Ley Núm. 100 de 4 de junio de 1980.

[10] Ley Núm. 101 de 4 de junio de 1980.

[11] Ley Núm. 102 de 4 de junio de 1980.

[12] Ley Núm. 103 de 4 de junio de 1980.

REGLA 162. SENTENCIA; DEFINICI[ó]N; CU[Á]NDO DEBER[Á] DICTARSE

El termino "sentencia", significa el pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone al acusado.

*El tribunal al tiempo de imponer sentencia deberá explicar verbalmente o por escrito las razones para la imposición de la sentencia.*

Cuando se pronunciare un fallo condenatorio en casos de delitos graves (*felonies*) el tribunal señalará una fecha para dictar sentencia que será, por lo menos, tres días después de dicho fallo. En casos de delitos menos graves (*misdemeanors*) el tribunal deberá dictar sentencia no más tarde del día siguiente al del fallo. En ningún caso se dictará sentencia antes de haber sido resuelta cualquier moción de nuevo juicio o moción para que no se dicte sentencia o antes de dar debida consideración al informe pre-sentencia que se requiere de acuerdo a la Regla 162.1.

Las reglas de evidencia no se aplicarán en la fase de sentencia, excepto lo concerniente a privilegios, según lo contenido en las Reglas 23 a 35 de las Reglas de Evidencia de Puerto Rico, Apéndice IV del Título 32. (Énfasis suplido.) 34 L.P.R.A. Ap. II, R. 162.

Como podemos notar, la transcrita regla exige que el tribunal "explique" las razones por las cuales impone una pena en particular. Ello, naturalmente, tiene relación directa con la determinación que haga el tribunal sobre la existencia o no de circunstancias agravantes o atenuantes, las que, como sabemos, facultan al tribunal para imponer una pena fija mayor o menor, según sea el caso. 33 L.P.R.A. sec. 3282. Por otro lado se entendió —según ello surge de la Exposición de Motivos de la citada Ley Núm. 100— que el exigirle a los jueces de instancia esta "explicación" tendrá el efecto de evitar la "arbitrariedad" en la imposición de las penas. En adición a lo antes expresado, debe mantenerse presente que el hecho de que los tribunales de instancia vengan obligados a pormenorizar las razones que hayan tenido para apartarse de la pena "ordina-

ria" prefijada por el estatuto facilita la función revisora de este Tribunal ante la impugnación de la misma, como "arbitraria y abusiva", por parte de los convictos-apelantes. Debe enfatizarse, por último, que esta "exigencia" *complementa* las disposiciones del antes citado Art. 59 del Código Penal.

En el presente caso, el apelante fue declarado culpable de infringir el Art. 105 del Código Penal, 33 L.P.R.A. sec. 4067. Dispone dicho artículo:

*Actos lascivos o impúdicos*

Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra, será sancionada con pena de reclusión según más adelante se dispone si concurriera cualesquiera de las siguientes modalidades:

(a) *Si la víctima fuere menor de 14 años.*

(b) Si la víctima ha sido compelida al acto mediante el empleo de fuerza física irresistible o amenaza de grave e inmediato daño corporal, acompañada de la aparente aptitud para realizarlo, o anulando o disminuyendo sustancialmente, sin su conocimiento, su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes o estimulantes o sustancias o medios similares.

(c) Si la víctima, por enfermedad o defecto mental temporero o permanente, estuviere incapacitada para consentir legalmente.

La pena de reclusión a imponerse por este delito será de un término fijo de seis (6) años, excepto cuando se trate de la modalidad del delito contenida en el inciso (a) de esta sección. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de ocho (8) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

*En la modalidad del delito a que se refiere el inciso (a) de esta sección, la pena de reclusión será por un término fijo de ocho (8) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.*

El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida en cualquiera de las modalidades anteriormente señaladas o ambas penas. (Énfasis suplido.)

El foro de instancia ofreció —según ello surge de la "minuta" transcrita al comienzo de la ponencia— como *única* explicación para imponerle al aquí apelante la pena máxima de diez (10) años de prisión que "[e]l Tribunal entiende que la pena se justifica con circunstancias agravantes". *Ello ni cumple con el mandato legislativo ni pone en condiciones a este Tribunal para poder resolver, en apelación, si dicho tribunal abusó o no de su discreción al así actuar.* Podría argumentarse que el tribunal de instancia adoptó implícitamente los "agravantes" a que hizo referencia el representante del Ministerio Público; esto es, que el delito se cometió contra una menor de 14 años, que dicha menor era la hijastra del apelante, y que el delito atenta contra la niñez. Debe observarse, sin embargo, que el propio Art. 105 del Código Penal contempla esta situación y "agrava" la pena a imponerse cuando se trata de una menor de catorce años.

Los tribunales de instancia al apartarse de la pena fija contemplada por el estatuto —ya sea reduciéndola, en caso de circunstancias atenuantes, o aumentándola, en casos de circunstancias agravantes— *deben expresar para récord, en forma clara y precisa, el porqué de su proceder.*

## V

Han resultado proféticas las palabras que expresáramos hace escasamente unos días, al disentir de la decisión emitida en *Torres, Ex parte,* 118 D.P.R. 469 (1987), a los efectos de que:

Hoy, so pretexto de que resulta conveniente para los hijos de padres divorciados, *se interviene con la letra expresa de un estatuto* y se interpreta el mismo de forma acomodaticia a unas creencias personales. *Mañana se puede intentar vio-*

*lentar el mandato expreso de otras leyes con consecuencias mucho más graves para nuestros conciudadanos.* Es por ello que disentimos. (Énfasis suplido.)

Dejaríamos sin efecto la sentencia apelada y devolveríamos el caso al tribunal de instancia para que el apelante sea resentenciado.