Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez, a la cual se unen la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo.
La Mayoría reconoce que la Enmienda Sexta de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, que garantiza en todo proceso criminal al acusado un juicio rápido y público por un jurado imparcial de un estado de la Unión y distrito donde se haya cometido el delito, es un derecho fundamental que protege a las personas que residen o transitan por la jurisdicción de ese estado. Sostienen que dicha protección individual aplica a los estados de la Unión *101 a través de la cláusula del debido proceso de ley de la Enmienda Décimocuarta de la Constitución de Estados Uni-dos, L.P.R.A., Tomo 1. Compartimos tal criterio.
Estamos conformes con el criterio de la Mayoría a los efectos que “ ‘[d]esde que Duncan v. Louisiana, 391 U.S. 145 (1968), resolvió que [el derecho a juicio por jurado] es “fundamental” y, como tal, aplicable a los estados ... parece razonable concluir que ese derecho es aplicable a Puerto Rico bajo la doctrina de incorporación territorial’ ”. Opinión mayoritaria, pág. 65 esc. 1.
No obstante, la Mayoría en este caso dispone que la sentencia con agravantes impuesta al aquí peticionario de reclusión por tres años, al amparo del beneficio de sentencia suspendida, es inconstitucional de acuerdo con la jurisprudencia del Tribunal Supremo de Estados Unidos. Entiende la Mayoría que la pena máxima que podía imponer el Tribunal de Primera Instancia era la pena fija de un año dispuesta por el Código Penal de 1974, por no haber sido aceptados por el acusado ni presentados al jurado prueba sobre agravantes y no haber determinación alguna de dicho cuerpo sobre esos extremos. DISENTIMOS de tal criterio y curso de acción.
I
Por hechos acontecidos el 29 de noviembre de 2003 en el Municipio de San Germán, el Ministerio Público presentó el 9 de agosto de 2004 una denuncia por violación al Art. 86 del Código Penal de 1974,(1) tipificado como homicidio involuntario, contra el aquí peticionario, Sr. Jaime Santana Vélez (señor Santana Vélez). Específicamente, se le imputó conducir negligentemente su vehículo de motor y de este *102 modo haber causado la muerte del Sr. Atiliano Vázquez, quien en ese momento cruzaba por la calle.(2)
En conformidad con lo dispuesto en nuestro ordenamiento jurídico para el delito de homicidio involuntario, el señor Santana Vélez fue juzgado mediante juicio por jurado.(3) Durante el juicio el Ministerio Público probó que el señor Santana Vélez actuó de manera negligente al no disminuir la velocidad del vehículo que conducía a pesar de que el sol le dificultaba la visibilidad en la carretera. En consecuencia, el Jurado emitió veredicto de culpabilidad en contra de éste por el delito de homicidio involuntario.
Habiendo sido el acusado juzgado debidamente y encontrado convicto por el delito de homicidio involuntario, el Tribunal de Primera Instancia impuso al acusado el cumplimiento de la sentencia con circunstancias agravantes, por lo cual fue condenado a tres años de reclusión al amparo del privilegio de sentencia suspendida.(4) Se le impuso, además, el pago de una multa de $5,000 y la suspensión de su licencia de conducir. La sentencia emitida no especificó las circunstancias consideradas como agravantes del delito de homicidio involuntario.
Inconforme con la imposición de la pena agravada, el señor Santana Vélez apeló ante el foro intermedio apelativo. En síntesis, alegó que se violó su derecho constitucional a juicio por jurado, ya que no se efectuó una vista para determinar la presencia de las circunstancias agravantes imputadas y, el Jurado no tuvo la oportunidad de evaluar si tales circunstancias se establecían, más allá *103 de duda razonable. Expresó, además, que el foro primario no explicó a la defensa los fundamentos para la imposición de la pena con agravantes.(5)
Por su parte, el Ministerio Público en su alegato de réplica a la apelación planteó que no existía controversia real sobre los hechos agravantes por lo que no era necesario celebrar vista previa.(6)
El Tribunal de Apelaciones acogió el argumento del Ministerio Público y expuso en su sentencia las circunstancias que, a su juicio y, según planteadas en el alegato de réplica del Procurador General ante dicho foro, fueron la base para incrementar el máximo estatutario de la pena impuesta al delito. El Tribunal de Apelaciones entendió que, según prescribe la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, le eran de aplicación los incisos (b)(1)(G) y (O) de la referida regla.(7)
El inducir a perjurio, conducta que se concluyó se configuró cuando el acusado se comunicó en tres ocasiones con una testigo de cargo que presenció los hechos. De acuerdo con la testigo, éste le expresó que “no iba a alta velocidad, y ella le contestó que iba a decir lo que había visto”.(8)
El segundo agravante al amparo del inciso (O) de la Regla 171, supra, lo fue la edad avanzada de la víctima, Sr. Atilano Vázquez, quien tenía al momento de los hechos 83 años.
Por último, se consideró como agravante del delito de *104 homicidio involuntario, el exceso del límite de velocidad dentro de la zona en la que conducía el señor Santana Vélez.
Por su parte el acusado planteó ante el Tribunal de Apelaciones que el exceder el límite de velocidad dentro de una zona y la muerte ocasionada constituye la negligencia y, por lo tanto, los elementos constitutivos del delito de homicidio involuntario, razón por la cual no pueden ser considerados como agravantes. Además, sostuvo que el agravante que recae sobre la mayoría de edad de la víctima no le aplica ya que el propósito de éste es castigar aquellas situaciones en las cuales el acusado comete el delito aprovechando la situación de desventaja por edad de la víctima, elemento de intención que en el presente caso estuvo ausente.
En cuanto al agravante por inducir a peijurio a una testigo de cargo, el señor Santana Vélez sostuvo que su actuación no iba dirigida a inducir a la testigo a cometer peijurio y, en efecto, la testigo no incurrió en tal conducta. Sostuvo además, que no se desfiló prueba sobre las circunstancias agravantes.
Finalmente, el Tribunal de Apelaciones determinó que las comunicaciones del acusado con la testigo principal de la fiscalía y la negligencia crasa del peticionario al conducir su vehículo de motor constituían los agravantes que justificaban la imposición de la pena agravada sin la necesidad de celebrar una vista especial. Respecto a la edad avanzada de la víctima, expresó que: “por existir otros agravantes en el casos [sic] de autos entendemos no es necesario entrar a resolver esta controvesia”(9) confirmando de este modo la sentencia apelada.
Inconforme aún, el señor Santana Vélez acude ante nos señalando que
*105 [e]rró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Instancia que decreta una sentencia con agravantes contra el peticionario, aduciendo a elementos inherentes en la tipificación del delito como agravantes e imputándole agravantes sin haberse probado más allá de duda razonable por [sic] el jurado.
II
El acusado plantea que por tratarse de un delito con derecho a juicio por jurado, era el jurado quien debía determinar las circunstancias agravantes conforme a los principios esbozados por el Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, 531 U.S. 466 (2000), y su progenie. En apoyo de su reclamo trae ante nuestra consideración lo resuelto en el caso Cunningham v. California, 549 U.S. 270 (2007). Arguye además, que el exceso de velocidad no es una circunstancia agravante sino que constituye la forma de negligencia que configuró el homicidio involuntario. Veamos la aplicación de la casuística anteriormente citada a los hechos del presente caso.
A. La constitucionalidad de estatutos que imponen penas mayores a un acusado ha sido recientemente discutida por el Tribunal Supremo de Estados Unidos en los casos Cunningham v. California, supra, Rita v. United States, 551 U.S. 338 (2007) y Oregon v. Ice, resuelto el 14 de enero de 2009. La reciente jurisprudencia reafirma y elabora sobre la doctrina establecida en los casos Apprendi y su pro-genie en tomo a las garantías contenidas en la Sexta Enmienda de Estados Unidos.(10)
*106 En Apprendi v. New Jersey, supra, el Tribunal Supremo de Estados Unidos analizó la constitucionalidad de un estatuto del estado de New Jersey que permitía al juez, al momento de dictar sentencia, utilizar factores que desfilaron durante el juicio como elementos para aumentar la pena máxima de un delito sin éstos haber sido considerados por el jurado a base del criterio de “prueba más allá de duda razonable”.
El acusado en este caso, el Sr. Charles Apprendi, fue arrestado por disparar hacia el hogar de una familia afroamericana que recientemente se había mudado al vecindario. Durante el interrogatorio con la Policía éste admitió que disparó al hogar de la familia por éstos ser negros y no desearlos en el vecindario. El Sr. Charles Apprendi había realizado una alegación preacordada con el Ministerio Público en la que se declaró culpable, entre otros cargos, del delito en segundo grado consistente en utilizar un arma de fuego con propósitos ilegales. El estatuto de New Jersey tipificaba el utilizar un arma de fuego para propósitos ilegales como delito de segundo grado, con pena de entre 5 a 10 años. Sin embargo, dicho estatuto permitía que esta pena fuese aumentada entre 10 a 20 años si el juez, por preponderancia de la prueba, determinaba que el delito había sido cometido con el propósito de intimidar a un individuo, o grupo de individuos por razones de raza, color, género, impedimento, religión, orientación sexual, u origen étnico.(11) Es decir, se trataba de un agravante estatutario dispuesto para aquellos “actos motivados con la intención de intimidar cierto grupo”.
Por no estar alegado en la acusación, el Sr. Charles Apprendi, no se declaró culpable del agravante constitutivo de “actos motivados con la intención de intimidar cierto grupo”. Sin embargo, luego de escuchar la prueba el juez determinó por preponderancia de la prueba que el delito fue cometido por motivaciones de prejuicio racial (“hate *107 crimes”). Por consiguiente, fue sentenciado a 12 años de prisión por ese cargo, dos años más sobre la sentencia máxima autorizada para el delito sin agravantes.
El Tribunal Supremo de Estados Unidos aceptó revisar la decisión apelada y resolvió que el estatuto de New Jersey que permitía al juez determinar por preponderancia de prueba los denominados “hate crimes” y, en consecuencia, aumentar el término de una sentencia criminal por encima del máximo estatutario basado en esos hechos agravantes, constituía una violación al derecho por jurado consagrado en la Enmienda Sexta de la Constitución de Estados Unidos.(12)
Cabe señalar que conforme a esta decisión, cualquier hecho que tienda a aumentar una sentencia más allá del límite estatutario, tiene que ser alegado en la acusación y probado por el Ministerio Público más allá de duda razonable sin distinción entre “elementos del delito” versus “elementos para dictar sentencia”.(13) De este modo se ga *108 rantiza el debido proceso de ley y el derecho a juicio por jurado.
Lo pautado por el Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, supra, ha sido reafirmado posteriormente en decisiones relativas a este tema. En Blakely v. Washington, 542 U.S. 296 (2004), el Sr. Ralph Howard Blakely fue acusado por el delito de secuestro en primer grado pero hallado culpable por secuestro en segundo grado.
El sistema de sentencia de Washington —“The Reform Act”— al amparo del cual fue sentenciado el señor Blakely, disponía para este delito una pena máxima de 10 años de prisión.(14) Este sistema establecía que un acusado no podía recibir una sentencia sobre el “standard range” establecido para el delito, es decir sobre 49 a 53 meses de prisión. También dicho estatuto o “Reform Act” contenía unas guías mandatorias de circunstancias agravantes las cuales justificaban el aumento de la sentencia, si el juez encontraba “substantial and compelling reasons justifying an exceptional sentence”.(15)
El juez impuso al señor Blakely una pena de 90 meses basado en que el delito fue realizado con “deliberada maldad”, uno de los factores enumerados en el estatuto de Washington.(16)
Acogido el recurso, el Tribunal Supremo de Estados Unidos resolvió que el sistema de imposición de penas del Estado de Washington al amparo de “The Reform Act” era inconstitucional, ya que violaba la Sexta Enmienda al au *109 torizar que el juez aumentara la pena máxima para el delito según sus propias determinaciones de hechos.
En efecto, el Tribunal Supremo de Estados Unidos sostuvo, que cualquier factor distinto a una convicción previa que pudiera agravar la pena máxima estatutaria de un delito, tenía que ser admitido por el acusado o sometido al Jurado, y sostenido por hechos admitidos o probados por el Jurado más allá de duda razonable. Por consiguiente, dado que la “deliberada maldad” no había sido admitida por el señor Blakely ni contenida en el pliego acusatorio, el juez no tenía discreción para utilizar este hecho y aumentar la sentencia sobre el máximo estatutario de 53 meses.(17)
Posteriormente, en United States v. Booker, 543 U.S. 220 (2005), se extendió la norma establecida en Blakely v. Washington, supra, al “Federal Sentencing Guidelines”. Estas guías —al igual que las contenidas en el sistema de sentencia de Washington, “Reform Act”— eran mandatorias, y permitían que el juez tomara en cuenta hechos adicionales a los desfilados ante el jurado, y por preponderancia de la prueba, aumentar el margen estatutario establecido.
El Sr. Freddie Booker fue hallado culpable en un juicio por jurado por el delito de posesión y distribución de drogas. El “Federal Sentencing Guidelines” establecía un “statutory range” de 210 a 262 meses de prisión. Sin embargo, el juez consideró que la cantidad de sustancia controlada que el Sr. Booker poseía era mayor que la determinada por el jurado. Teniendo en cuenta este hecho decidió sentenciar al acusado a 360 meses de prisión.
El Tribunal Supremo de Estados Unidos resolvió que las disposiciones de la Guía de Sentencia Federal que ordenaban de manera mandatoria al juez sopesar hechos que no fueran considerados por el Jurado para imponer una sen *110 tencia, eran inconstitucionales y violaban el derecho salvaguardado en la Sexta Enmienda.(18) En consecuencia, fueron transformadas en recomendaciones para orientar al juez en el ejercicio de su discreción.(19) De esta manera, el juez no estaba atado al “sentencing range” de las guías mandatorias y la revisión apelativa de éstas sentencias estaría sujeta al criterio de razonabilidad.(20) Sobre el particular, el Tribunal Supremo de Estados Unidos expresó lo siguiente:
If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather tan required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authorithy of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by [this case] would have been avoided entirely if Congress had omitted from the [Federal Sentencing Reform Act] the provision that make the Guidelines binding on district judges .... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant. (Citas omitidas y énfasis suplido.)(21)
Dos años más tarde, el Tribunal Supremo de Estados Unidos expidió un recurso presentado por el Sr. John Cunningham. Este fue resuelto el 22 de enero de 2007.(22) *111 En este caso, en el estado de California se encontró culpable al señor Cunningham por el delito de agresión sexual contra su hijo.
El sistema de sentencia determinada de California, “DSL”(23) disponía para éste delito una pena entre 6,12,16 años. Este sistema “DSL” funcionaba a base de tríadas de sentencias fijas, en las cuales el juez no tenía discreción para seleccionar dentro del margen establecido, es decir, entre 6 y 16 años. En consecuencia, estaba obligado a imponer la pena media a un acusado de delito en ausencia de circunstancias agravantes o atenuantes.(24) Sin embargo, si el juez encontraba algún hecho adicional que estuviera razonablemente relacionado con la decisión emitida por el jurado podía imponer la pena agravada. Estos hechos se establecían por preponderancia de la prueba y debía hacerlos constar oralmente en el expediente. En Cunningham v. California, supra, el Juez, luego del veredicto del jurado, consideró la vulnerabilidad de la víctima y la conducta violenta del señor Cunningham, como circunstancias agravantes que justificaban imponerle la pena agravada de 16 años.
En atención al reclamo del señor Cunningham, el Tribunal Supremo de Estados Unidos determinó que el sistema de sentencia determinada, “DSL”, violaba las garantías y salvaguardadas de la Sexta y Decimocuarta Enmienda de la Constitución de Estados Unidos, ya que otorga al juez autoridad única para hacer determinaciones de hecho para una pena agravada o atenuada. Además, carecía de discreción para imponer mía sentencia dentro del intervalo o “range” estatutario.
*112 Fundamentó que, con excepción de casos de convicciones previas, la determinación fáctica necesaria para agravar las penas era provincia exclusiva del jurado, las cuales tenían que ser probadas más allá de duda razonable. Por consiguiente, el sistema de tríada de sentencia establecido impedía que el juez ejerciera su discreción para considerar por sí mismo hechos que le permitieran seleccionar una sentencia entre 6 y 16 años.
El Tribunal Supremo de Estados Unidos resolvió que el Estado de California podía adoptar cualquiera de los dos sistemas incorporados por muchos estados y que son compatibles con lo resuelto en los casos de Apprendi y Blakely, supra. Se expresó el Alto Foro sobre este asunto de la forma siguiente:
We note that several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing.
They have done so by calling upon the jury—either at a trial or in a separated sentencing proceeding—to find any fact necessary to imposition of an elevated sentence. As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. Other states have chosen to permit judges genuinely “to exercise broad discretion ... within a statutory range,” which “everyone agrees,” encounters no Sixth Amendment shoal. (Citas y escolios omitidos, y énfasis suplido.)(25)
En Rita v. United Status, supra, el Tribunal Supremo de Estados Unidos resolvió que, compatible con lo decidido en Cunningham v. California, supra, una sentencia dictada con circunstancias agravantes se presume válida si está comprendida dentro de los parámetros establecidos en el estatuto.(26)
Conforme a la decisión del Tribunal Supremo de Estados Unidos, existen dos alternativas para evitar una viola *113 ción de la Sexta Enmienda. En un sistema de sentencia determinada se puede presentar al Jurado todo hecho que sea pertinente para la imposición de una sentencia agravada; o permitir que los jueces ejerzan su discreción dentro del margen estatutario, lo cual no presentaría problemas de violación al derecho ajuicio por jurado. Nos inclinamos por la segunda alternativa, la cual no está reñida con nuestro sistema de imposición de sentencia.(27)
Nuestro ordenamiento jurídico no está basado en un sistema de tríada de sentencia sino que funciona a base de un “sentencing range” o intervalo de sentencia donde se establecen penas que fluctúan hacia un mínimo, en presencia de atenuantes y hacía un máximo, en presencia de agravantes. Esto permite que el juez ejerza su discreción conforme a las guías codificadas en la Regla 171 de Procedimiento Criminal, supra, la cual orienta la discreción del juez dentro del intervalo de la pena. La Regla 162.4 de Procedimiento Criminal,(28) establece los procedimientos adecuados para evitar un abuso de discreción y ofrecer al acusado las garantías del debido proceso de ley.
Atendido el problema constitucional planteado ante nos al amparo de la Sexta Enmienda de la Constitución de Estados Unidos, supra, procedemos a evaluar el aspecto procesal de la imposición de la pena con circunstancias agravantes, en ausencia de la celebración de una vista evidenciaría de naturaleza adversativa.
B. El señor Santana Vélez fue acusado de homicidio involuntario(29) y sentenciado el 14 de septiembre de 2005. El peticionario incurrió en dicho delito durante la vigencia del anterior Código Penal, derogado el 9 de agosto de 2004.
En Puerto Rico mediante la Ley Núm. 110 del 4 de junio *114 de 1980,(30) se eliminó el sistema de sentencia indeterminada y se estableció un sistema de pena fija, que permitía aumentar o disminuir la pena conforme a la presencia de circunstancias agravantes o atenuantes. Al amparo del sistema de sentencia determinada, el juez no posee la discreción “amplia” que concede el sistema de sentencia indeterminada, pero retiene cierto grado de discreción para apartarse de la pena fija establecida para el delito por el cual es hallado culpable el acusado, ya para reducirla o para aumentarla.(31)
El Código Penal de 1974, incorporó este modelo de Sentencias Determinadas.(32) La pena fija en el Código Penal de 1974 para el delito de homicidio involuntario se estableció de acuerdo a la existencia de circunstancias agravantes o atenuantes durante el transcurso de la acción punible. La sanción básica constituía un término de reclusión de un año. De existir circunstancias atenuantes, se podía reducir la reclusión a seis meses y un día, y de existir circunstancias agravantes, ésta podía ser incrementada a tres años.
En nuestra jurisdicción el sistema de imposición de la pena con circunstancias agravantes y atenuantes se rige por lo dispuesto en la Regla 171 de Procedimiento Criminal, supra, la cual dispone en lo pertinente lo siguiente:
El Tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena.
Durante la vigencia del Código Penal de 1974, se dispo *115 nía que los factores pertinentes para el ejercicio de la discreción del juez eran los establecidos en la Regla 171 de Procedimiento Criminal, supra, en armonía con el Art. 60 del Código Penal derogado.(33)
Por lo tanto, al ejercer su discreción los jueces debían regirse por los criterios establecido en la Regla 171 de Procedimiento Criminal, supra, y el Art. 60 del Código Penal de 1974, conforme a los hechos y circunstancias de cada caso en particular y a la situación individual de cada convicto.(34)
Al interpretar las disposiciones antes citadas resolvimos que para sentenciar válidamente a un acusado por un delito cuando median circunstancias agravantes, debe ha *116 berse presentado prueba sobre la presencia de tales circunstancias durante una vista evidenciaría de naturaleza adversativa.(35) La evaluación sobre la presencia o ausencia de circunstancias agravantes o atenuantes la gobierna el derecho penal sustantivo.
La Regla 162.4 de Procedimiento Criminal, supra dis-pone, lo siguiente:
Tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Si de las alegaciones sometidas surgiere que existe controversia real sobre un hecho material que requiriere la presentación de prueba, entonces el tribunal celebrará una vista en el más breve plazo posible, en la cual:
a) El Fiscal podrá presentar prueba de circunstancias agravantes que a su juicio justifiquen que se dicte una sentencia rigurosa o el que no se deban suspender los efectos de la sentencia o, en caso contrario, que se impongan condiciones estrictas.
b) El acusado podrá presentar prueba de circunstancias atenuantes que a su juicio justifiquen que se dicte una sentencia benigna o que se suspendan los efectos de la misma.
Como bien indica la Regla 162.4, supra, en los casos donde existe una solicitud para que el acusado sea sentenciado con circunstancias agravantes o atenuantes se puede celebrar una vista. Dicha vista puede ser a solicitud de parte o ser señalada motu proprio por el Tribunal. Esta vista permite controvertir las circunstancias agravantes o atenuantes y de este modo orientar la discreción del juez al momento de seleccionar la pena dentro del margen estatutario. Cabe señalar que la vista tal y como está cumple una función orientadora que se limita a los “sentencing factors”, es decir, circunstancias accidentales que influyen en la determinación de la pena, pero que en sí mismos no constituyen el injusto penal.
*117 No obstante, a pesar de que la Regla 162.4 de Procedimiento Criminal, supra, dispone dicho procedimiento, la jurisprudencia interpretativa de dicha regla ha reiterado que si de la prueba presentada en el juicio surgen las circunstancias agravantes o atenuantes y no existe controversia real sobre la presencia de alguna de tales circunstancias, no hay necesidad de celebrar la vista.(36) Así también, hemos expresado que tampoco es necesario celebrar dicha vista cuando las partes no la solicitan y no existe controversia real sobre un hecho material que requiera la presentación de prueba.(37)
Por otro lado, la Regla 162.4 de Procedimiento Criminal, supra, requiere que los tribunales expliquen verbalmente o por escrito las razones por las cuales imponen una pena particular.(38) Esta explicación cumple el objetivo de evitar la “arbitrariedad en la imposición de las penas”. Cuando el Tribunal de Primera Instancia expone las razones que ha tenido al imponer una pena con agravantes o atenuantes, facilita la función revisora de los tribunales apelativos.
h-i h—I h-í
El reconocer a nuestros jueces la discreción dentro del margen estatutario establecido no está reñido con las disposiciones de la Sexta Enmienda de la Constitución de Estados Unidos ni con la Constitución del Estado Libre Asociado de Puerto Rico. Esta discreción, dentro del margen estatutario, permite que el juez evalúe las circunstancias agravantes y atenuantes que modifican las penas, modo de proceder que es cónsono con lo resuelto en Cunningham v. California, supra.
*118 De acuerdo con la Regla 162.4 de Procedimiento Criminal, supra, tanto el Ministerio Público como la defensa pueden solicitar al Tribunal que escuche prueba de circunstancias agravantes o atenuantes para orientar la discreción judicial en la imposición de la pena dentro del mar-gen estatutario. Esta vista no tiene que celebrarse en presencia del Jurado y es imperativa siempre que exista controversia real sobre algún hecho material que requiera la presentación de prueba.
En el caso ante nos, el señor Santana Vélez fue encontrado culpable por un jurado por el delito de homicidio involuntario según el derogado Código Penal de 1974. Los elementos constitutivos del delito de homicidio involuntario, en esta modalidad, son la acción negligente del acto y como resultado, la muerte de un ser humano. La pena básica para dicho delito es un término de reclusión de un año. De existir atenuantes, se podía reducir a seis meses y un día y de estar presentes agravantes, la pena podía incrementarse hasta tres años.
El foro sentenciador impuso al señor Santana Vélez la pena máxima de tres años dispuesta en el Código Penal de 1974 para los casos en que estaban presentes circunstancias agravantes. El acusado se acogió al beneficio de sentencia suspendida según dispuesto en la Ley Núm. 259 de 3 de abril de 1946.(39)
La sentencia del Tribunal de Primera Instancia no hizo mención alguna de las circunstancias agravantes presentes para aumentar la pena fija establecida para el delito. No surge del expediente que, en su momento, el Ministerio Público haya alegado y solicitado presentar prueba sobre la presencia de circunstancias agravantes que permitieran al juez sentenciador razonablemente imponer una pena de conformidad. Por tal razón, la defensa no solicitó la celebración de una vista adversativa para controvertir la prueba en su contra.
*119 El Tribunal de Apelaciones, sin poseer los elementos de juicio necesarios, acogió el argumento presentado por el Procurador General y determinó como circunstancias agravantes las llamadas que el señor Santana Vélez hiciera a la testigo ocular del accidente como un intento de “persuadir o tratar de inducir a peijurio” a dicha testigo.(40) Asimismo, que la víctima era mayor de 60 años(41) y, finalmente, que el conductor haya continuado “su marcha a dicha velocidad a pesar de tener la luz del sol obstruyéndole la visión”.(42)
Los hechos presentes manifiestan que no se desfiló prueba sobre las circunstancias agravantes impuestas al señor Santana Vélez. Unas llamadas telefónicas no constituyen prueba suficiente para establecer sin más que el acusado indujo a peijurio a la referida testigo.
No desfiló prueba alguna durante el juicio sobre el contenido de las referidas conversaciones de manera que se pudiese concluir que el acusado intentó lograr un acuerdo con la testigo para que ofreciera testimonio falso, o que le propuso tal curso de acción.
Por otro lado, se le imputó como agravante el hecho de que la víctima era mayor de 60 años. Sobre el particular, la Ley Núm. 142 del 18 de julio de 1998 enmendó la Regla 171 de Procedimiento Criminal para incorporar los incisos “o” y “p” a fin de incluir como circunstancias agravantes que la víctima del delito fuera una persona de 60 años o más, o que el delito se cometiera en una institución, albergue u hogar para personas de 60 años o más. La intención legislativa, recogida en la Exposición de Motivos de dicha ley, va dirigida hacia aquellos delitos en los que hubo la intención criminal de aprovecharse de la avanzada edad de *120 la víctima.(43) En el presente caso, es evidente que la edad de la víctima no constituyó un factor o elemento junto con el acto intencional de causarle daño que configure la comisión del delito de homicidio involuntario.
Por último, no surge del expediente que el Ministerio Público planteara durante la celebración de juicio, que se tomara en cuenta el exceso de velocidad como una circunstancia agravante. Precisamente, según las circunstancias particulares de este caso, fue el exceso de velocidad la condición inherente a la negligencia propia del homicidio involuntario.(44)
De acuerdo con los hechos y principios expuestos, estimamos que en el presente caso, existen hechos controvertidos que exigen la presentación de prueba en una vista evidenciaría de naturaleza adversativa para orientar la discreción del juez en la imposición de la sentencia.
IV
Por los fundamentos antes expuestos disentimos respetuosamente del curso de acción de la Mayoría. Revocaríamos la sentencia apelada y devolveríamos el presente caso al Tribunal de Primera Instancia para que el Ministerio *121 Público en una vista adversativa pruebe las circunstancias agravantes que tenga a bien, previamente alegadas y debidamente notificadas al aquí peticionario. Una vez el foro primario pueda determinar sobre este asunto estaría en posición de sentenciar al aquí peticionario.

 33 L.P.R.A. sec. 4005.

 Denuncia. Anejo I de la Petición de Certiorari, pág. 1.

 Este delito es clasificado como menos grave con derecho a juicio por jurado, por lo que el Ministerio Público presentó el 3 de noviembre de 2004 el pliego acusatorio y se procedió a su lectura formal.

 El Art. 86 del Código Penal, supra, dispone que “[cjuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años, de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. El Tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida, o ambas penas”.

 Alegato presentado por la defensa ante el Tribunal de Apelaciones. Anejo VII de la Petición de certiorari, págs. 19-34.

 Alegato presentado por el Procurador General ante el Tribunal de Apelaciones, Anejo de la Petición de certiorari, pág. 39.

 “(G)E1 acusado amenazó a los testigos, ilegalmente evitó que los testigos asistieran a las vistas o los indujo a cometer perjurio o en cualquier otro modo obstaculizó el proceso judicial.
“(O) La víctima del delito era una persona de sesenta (60) [años de edad] o más.”

 Testimonio de la testigo ocular Sra. Mildred Vélez Pacheco. Anejo VI. Exposición narrativa de la prueba, pág. 2, Anejo de la Petición de certiorari, pág. 11.

 Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de Mayagüez, Anejo IX de la Petición de certiorari, pág. 48.

 “jn a]i criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.” U.S.C.A. Const., Amend. VI.

 N.J. Stat. Ann. Secc. 2C: 44-3(e).

 “The Sixth Amendment demands that the fact of a prior conviction, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Because the hated-crime enhancement increased the punishment available to the sentencing judge instead of raising the floor on the sentencing range as a mandatory minimum would, the Court would not allow the hated-crime enhancement to escape the constitutional protections.” Apprendi v. New Jersey, supra.

 Así lo resolvimos en Pueblo v. Montero Luciano, 169 D.P.R. 360 (2006), donde expresamos que la Regla 48 de Procedimiento Criminal y la jurisprudencia previa exigen alegar la reincidencia, ya que no constituye un “sentencing factor” y al ser considerada tiene el efecto de aumentar la sentencia. En esa ocasión resolvimos que la Sec 7.04(b)(4) y (b)(5) era inconstitucional, pues violaba el derecho a notificación de cargos y a un debido proceso de ley. Aclaramos que, la reincidencia equivale a los “enhancements” en la jurisprudencia federal.
En Apprendi v. New Jersey, supra, pág. 485, se definen los “elementos para dictar sentencia” o “sentencing factors” de la manera siguiente: “a fact that was not found by a jury but that could affect the sentence imposed by the judge.”
Cabe señalar que al respecto, en los casos Almendarez-Torres v. United States, 523 U.S. 224 (1998) y Castillo v. United States, 530 U.S. 120 (2000), el Tribunal Supremo federal argumentó la diferencia entre hechos que son elementos del delito y hechos relevantes únicamente para dictar sentencia. Sin embargo, el Tribunal Supremo de Estados Unidos resolvió a favor de que los hechos que tendiesen a aumentar la pena, tenían que ser considerados por el Jurado. No obstante, más enfáticos aún, en Apprendi, supra, el Tribunal Supremo federal expresó lo siguiente: “merely labelling the hate-crime enhancement as a sentencing factor could not allow New Jersey to escape constitutional requirements.”

 «The Reform Act provided:
“If no facts beyond those reflected in the jury’s veredict were found by the trial judge, a defendant could not receive a sentence above a ‘standard range’ of 49 to 53 months. The Reform Act permitted but did not required a judge to exceed that standard range if she found substantial and compelling reasons justifying an exceptional sentence.” Blakely v. Washington, 542 U.S. 296, 299 (2004).

 Wash.Rev.Code Ann. Sec. 9.94 A(120) 2 (2000).

 Blakely v. Washington, supra, pág. 300.

 Al respecto, el Juez Antonin Scalia, quien articuló la opinión mayoritaria del Tribunal, expresó que tal como se estableció en Apprendi, supra: ‘Judge’s authorithy to sentence derives wholly from the jury’s verdict. Without that restriction, the jury would not exercise the control that the Framers intended.”

 “Thg Guidelines as written, however, are not advisory; they are mandatory and binding on all judges.” Blakely v. Washington, supra.

 La secciones modificadas fueron 18 U.S.C.A. sec. 3553(b)(1) y 18 U.S.C.A. sec. 3742(e).
El Tribunal Supremo federal evaluó dos tendencias posibles. La primera:
“a) ... ‘would engraft onto the existing system today’s Sixth Amendment jury trial requirement....’”
La segunda, acogida por el Tribunal Supremo federal:
“b) ‘made the guidelines advisory while the same time maintaining a strong connection between the sentence imposed and the offender’s real conduct— a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve.’ ” (Énfasis suplido.)

 United States v. Booker, 543 U.S. 220, 261 (2005).

 íd., pág. 233.

 Cunningham v. California, supra.

 En 1970 el Estado de California adoptó el sistema de sentencia determinada, ‘DSL” con el objetivo de mantener la uniformidad y asegurar la proporcionalidad del castigo y el delito.

 “Cunningham’s sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years.” Cunningham v. California, supra, opinión mayoritaria del Juez Ginsburg.

 Cunningham v. California, supra.

 “This Court’s Sixth Amendment cases do not automatically forbid a sentencing court to take account factual matters not determined by a jury and the increase the sentence in consequence.” Rita v. United States, supra.

 Ejemplo de ello lo es Pueblo v. Pérez Zayas, 116 D.P.R. 197 (1985). En dicho caso discutimos el modo de proceder cuando el juez tiene ante su consideración circunstancias atenuantes y agravantes.

 34 L.P.R.A. Ap. II.

 Art. 86 del Código Penal de 1974, supra.

 25 L.P.R.A. sec. 418a (ed. 1999).

 E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, [Bogotá], Editorial Forum, 1993, Vol. III, pág. 541.

 Actualmente, el Nuevo Código Penal (2004), según enmendado, provee un intervalo de pena para cada delito. El Art. 74 del Nuevo Código Penal, 33 L.P.R.A. sec. 4702, ofrece unas guías que sirven para orientar al juez en el ejercicio de su discreción al momento de escoger la pena según el grado de severidad correspondiente al delito.

 El Art. 60 del Código Penal de 1974 (33 L.P.R.A. sec. 3284), proveía una enumeración de circunstancias personales y de circunstancias relacionadas con el hecho delictivo, las cuales debían ser consideradas por el juez al imponer la sentencia. El referido artículo disponía:
“Los objetivos generales que informan la imposición de la pena son los siguientes:
“(a) La protección de la sociedad y la prevención de la delincuencia, (b) El castigo justo al autor del delito, (c) La rehabilitación moral y social del autor dentro de los recursos disponibles del Estado, (d) El logro de la uniformidad en la imposición de la pena, (e) La consideración de la naturaleza disuasiva de la pena.
“Dentro de los límites establecidos por la ley, las penas se fijarán de acuerdo a la mayor o menor gravedad del hecho cometido y tomando en consideración, entre otras, las siguientes circunstancias:
“(a) La naturaleza de la acción u omisión delictuosa, (b) Los medios empleados, (c) la importancia de los deberes transgredidos, (d) La extensión del daño o del peligro causado, (e) La edad, educación, historial social y reputación del autor, (f) La conducta relacionada con el delito antes, durante y después de la comisión del mismo, (g) La calidad de los móviles del hecho, (h) La conducta de la víctima relacionada con la transacción delictuosa. ...
“Las relaciones, circunstancias y cualidades personales que aumenten o disminuyan la pena, afectará [n] solamente a la persona a quien correspondan.”
La Dra. Dora Nevares-Muñiz criticó en su análisis el señalamiento de circunstancias del referido artículo, así como la Regla 171 de Procedimiento Criminal, supra, porque facilitaban la disparidad en la imposición de la sentencia, propiciando disparidad y penas no proporcionales a la severidad del delito. Es decir, en ocasiones las penas impuestas en el Código Penal de 1974 no correspondían a la severidad del delito ni propiciaban la uniformidad en las sentencias para personas que cometen delitos con similar severidad. Sobre esta discusión, véase el análisis editorial del Art. 60 en D. Nevares-Muñiz, Código Penal de Puerto Rico, Hato Rey, Inst, para el Desarrollo del Derecho, ed. 1995, pág. 91. Véase, además, D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, 5ta ed. rev., San Juan, Inst, para el Desarrollo del Derecho, 2005, pág. 60.

 Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 371 (1991); Pueblo v. Castro Muñiz, 118 D.P.R. 625 (1987).

 Pueblo v. González Olivencia, 116 D.P.R. 614 (1985). Aquí establecimos que, no puede considerarse como prueba de agravantes la información del oficial probatorio en el informe presentencia.

 Pueblo v. Rodríguez Santana, 146 D.P.R. 860 (1998); Pueblo v. Santiago Acosta, 121 D.P.R. 727, 743 (1988); Pueblo v. Castro Muñiz, supra, pág. 636.

 íd.

 Pueblo v. Castro Muñiz, supra.

 34 L.P.R.A. sec. 1026.

 Regla 171 (b)(1)(G) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 Regla 171 (b)(l)(0) de Procedimiento Criminal, supra.

 Sentencia dictada por el Tribunal de Apelaciones. Anejo IX de la Petición de certiorari, pág. 47.

 Exposición de Motivos de la Ley Núm. 142 de 18 de julio de 1998 (1998 Leyes de Puerto Rico 587).

 “Distíngase que, cuando se trata de muertes causadas por conductores de vehículos de motor, el acusado puede haber realizado varios actos ilegales que no equivalen a delitos menos graves. Por ejemplo, no tocar bocina cuando la ley lo requiere, conducir a velocidad mayor que el límite autorizado, no detenerse ante una señal de pare. En estos casos, si ocurre una muerte como consecuencia de tales actos será homicidio involuntario en la modalidad de negligencia.” (Énfasis suplido.) Véase los comentarios al delito de homicidio involuntario de la doctora Nevares-Muñiz en su Código Penal de Puerto Rico, ed. 1995, op. cit, págs. 129-130.
“Cuando la circunstancia agravante o atenuante es un elemento del delito o se trata de una condición que es inherente al delito no puede ser doblemente considerada al fijar la pena. En el derecho Comparado es lo que los tratadistas denominan caso de inherencia expresa e inherencia tácita.” Véase los comentarios a la aplicabilidad de las circunstancias atenuantes o agravantes en el Artículo 73 en Nevares-Muñiz, Código Penal de Puerto Rico, ed. 2004—2005, Ed. Inst, para el Desarrollo del Derecho, págs. 100-101.